Kirk BIGELOW, Petitioner,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.

Joseph HIGGINS, Petitioner,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.

Appeal Nos. 84–918, 84–927.

United States Court of Appeals, Federal Circuit.

Dec. 19, 1984.

Gay Snyder, New Brunswick, N.J., argued for petitioner. With him on the brief was Mark D. Roth, Washington, D.C., of counsel.

J. Weili Cheng, Washington, D.C., Dept. of Justice, argued for respondent. With him on the brief were Richard K. Willard, Acting Atty. Gen., David M. Cohen, Director, and Robert A. Reutershan, Washington, D.C.

Before FRIEDMAN, DAVIS and BALDWIN, Circuit Judges.

FRIEDMAN, Circuit Judge.

These petitions for review challenge two arbitrators' awards (1) upholding the Social Security Administration's (Administration) suspension of the petitioners, and (2) reversing the discharges of the petitioners and reinstating them without backpay. Both cases present the same issues on substantially identical facts, and we decide them in a single opinion. We *affirm* both awards.

I

Kirk Bigelow and Joseph Higgins were employed by the Administration as claims representatives. They had been active as union representatives since 1975. In December 1981, Bigelow was elected Executive Vice President of a Local that represented more than 3,000 Administration employees in the New York City area. Higgins became First Grievance Vice President of the Local around the same time. As union officials, the petitioners handled grievances, arbitrations, negotiations, and other representational work for the Local.

Under the regional collective bargaining agreement, Bigelow, as Executive Vice President, was entitled to spend 50 percent of his time on union activities, and Higgins was entitled to devote as much time as he needed to union affairs. Until June 1982, they routinely had been permitted to spend all their time on union activities.

The Administration and the union negotiated a new national agreement that superseded the regional agreements on June 11, 1982. Article 30 of the national agreement contained general provisions governing official time for union representatives. In addition, a side-bar agreement, signed on December 21, 1981, covered official time positions in specific regions. The side-bar agreement provided in pertinent part:

[T]here will be four (4) 100% positions in New York/New Jersey, in lieu of the past practice on 100% positions .... Those positions which hereafter are not 100% per se will be governed by provisions of Article 30 of the Master Agreement.

Article 30 provided, among other things, that "union officials, when not engaged in authorized labor-management activities, are expected to accomplish the duties of the position to which they have been assigned."

The presidents of the four Locals in the region were assigned to the four 100 percent positions under the side-bar agreement. Bigelow was granted 50 percent official time for union activities, and both petitioners were eligible for additional "reasonable" official time for those activities when requested in advance on Form SSA–75, as the agreement provided.

The petitioners continued to use all of their time for union business. Neither petitioner did any agency work after 1981.

After the national agreement was executed in June 1982, the Administration did not grant all of the petitioners' requests for additional official time. It insisted that they submit the proper forms specifying the nature of their union business that required such time. When denied official time, the petitioners usually then requested leave without pay (LWOP), which the Administration also sometimes denied.

The Administration ordered the petitioners to participate in a refresher training program so they could resume their agency work when not engaged in union activities. The petitioners refused to participate in the training, asserting that they were required to spend all their time on union activities. The Administration marked both petitioners absent without official leave (AWOL) in several instances and suspended them for five days for being AWOL and insubordinate. When they persisted in this refusal, the Administration discharged them early in 1983.

The Administration's denial of LWOP was the subject of a separate earlier grievance by the Local. Arbitrator Walter Eisenberg upheld the Local's position and ordered the Administration to specify the basis for future denials of LWOP and to change to LWOP all AWOL charges for "incorrect denials" of LWOP. With re-

spect to the petitioners here (and one other employee), the Arbitrator provided that "any conversion of AWOL charges to LWOP charges hereby required shall not be construed to constitute a finding as to the conduct of any of these three employees in the circumstances pertaining to any particular AWOL charge ...." *AFGE Local 3369 v. Department of Health and Human Services*, No. 82K–09368 (Fed. Mediation & Conciliation Service, June 11, 1983) (Eisenberg, Arb.).

In separate grievance proceedings brought by each of the petitioners, two arbitrators (one of whom was Mr. Eisenberg) each independently upheld the suspensions but reversed the removals and ordered the petitioners reinstated without backpay. Both arbitrators rejected the petitioners' contention that they were entitled to 100 percent official time under the national agreement. The arbitrators pointed out that the petitioners did not hold one of the four positions for which 100 percent official time was provided, and that the petitioners therefore could obtain official time for union activities only by requesting such time on Form SSA–75.

The arbitrators ruled that the Administration's order to participate in a training program was valid and did not interfere with the petitioners' union activities. The arbitrators held that the prior Eisenberg decision converting AWOL to LWOP did not retroactively validate the petitioners' insubordination in disobeying the orders to retrain, rejecting the petitioners' contention that under that decision the petitioners were not in a duty status when they refused the retraining.

## II

The petitioners challenge the arbitrators' awards sustaining the Administration's orders directing them to retrain on two grounds: (A) that under the collective bargaining agreement they were entitled to spend all of their time on union business and therefore could not be required to retrain; and (B) that the award by arbitrator Eisenberg converting AWOL to LWOP meant that they were not in a duty status when ordered to retrain. They contend that since the training order thus was improper, they were not insubordinate in refusing to obey it.

A. Prior to the 1982 national agreement and the earlier side-bar agreement, the petitioners had spent all of their time on union affairs. Apparently relying on the provision in the national agreement that "any prior benefits and practices and understandings which were in effect on the effective date of this agreement at any level (national, council, regional and local), and which are not specifically covered by this agreement and do not detract from it shall not be changed ..." (article 1, section 2), they contend that after the national agreement was executed, they were entitled to continue to spend all their time on union business.

The flaw in this argument, as the arbitrators pointed out, is that the right of employees to spend all their time on union matters was "specifically covered by this [national] agreement" and that under that provision the petitioners were not entitled to 100 percent official time. Although the side-bar agreement was executed prior to the national agreement, it was intended to implement it in the local regions and therefore must be viewed as a part of it. The side-bar agreement provided that "in lieu of the practice on 100% positions" in the New York region, only the presidents of the four Locals in that region were entitled to spend all their time on union business. Supplement F of Appendix F of Article 30 provided that other "Local Officials and Representatives" were to "be granted reasonable official time which is necessary for the performance of labor-management relations."

There is no ambiguity in these provisions. In place of the past practice under which a number of Local officials, including the petitioners, were given 100 percent official time for union business, only the presidents of the four Locals thereafter would have that right. All other officials would receive only such reasonable time as

"is necessary for the performance of labor-management relations." The latter provision conforms to the standard in the Federal Service Labor Management Relations Act, 5 U.S.C. § 7131(d) (1982), that a union representative "shall be granted official time in any amount the agency and the exclusive representative involved agree to be reasonable ...." The side-bar agreement also incorporated the provision in article 30 of the national agreement that "when not engaged in authorized labor-management activities," union officials "are expected to accomplish the duties of the position to which they have been assigned."

■ Since after June 1982 petitioner Bigelow had been granted only 50 percent official time for union business and petitioner Higgins only such time as the Administration authorized him to take as necessary for the conduct of union affairs, these two employees would be required to spend a substantial portion of their time in performing the duties of their assigned positions. When the national agreement changed the procedures governing official time in June 1982, neither petitioner had done any work in his assigned position for two years. Since thereafter they would be required to perform those official duties, the Administration was fully justified in ordering them to undergo retraining. Their failure to comply with that direction was insubordinate.

The petitioners cannot avoid responsibility for their insubordination by the claim that they believed that under the national agreement they were entitled to 100 percent official time. "Government employees ... may not refuse to do work merely because of disagreements with management ... [and failure] to perform their duties ... [is done] at the risk of being insubordinate." *Nagel v. Department of Health and Human Services*, 707 F.2d 1384, 1387 (Fed.Cir.1983), *quoting from Boyle v. United States*, 515 F.2d 1397, 1402 (Ct.Cl.1975). The same principle applies to a government employee's refusal to undergo training to enable him properly to do his work.

The appropriate procedure for the petitioners to have followed would have been to obey the retraining order and to file a grievance challenging the Administration's interpretation of their right to official time under the national agreement. That was the procedure they followed to challenge both the Administration's charging them for absence without leave and for suspending and removing them for insubordination. Although the petitioners contend that following that procedure would have interfered with the proper performance of their union duties, they have not established that claim. That argument is but another version of their contention that they were entitled to 100 percent official time.

The petitioners attempt to draw an analogy between this case and decisions of the Court of Claims holding that an employee may not be disciplined for refusing to accept a reassignment that is illegal because it was intended to discipline the employee or to compel him to resign, or was not in the interest of the service. *Comberiate v. United States*, 203 Ct.Cl. 285 (1973); *Schmidt v. United States*, 145 Ct.Cl. 632 (1959). In the present case, however, the orders the petitioners refused to obey were lawful, and the petitioners could not disobey the orders because of their own view of the legality or propriety of the direction. "Unless the transfer is, in effect, a discharge, the employee has no right simply to walk out; he must accept the orders of his superior, even if felt to be unjust, until relieved of them by judicial or administrative action." *Rosado v. Santiago*, 562 F.2d 114, 119 (1st Cir.1977).

If an analogy is invoked, a more appropriate one would be to the rule the Supreme Court announced in *United States v. United Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), that an order issued by a court with jurisdiction over the subject matter and person must be obeyed (on pain of criminal contempt) until it is reversed by appropriate proceedings, even though the law under

which the order is issued is later found unconstitutional or the order is otherwise set aside on appeal. *Id.* 330 U.S. at 293–94, 67 S.Ct. at 695–96.

In the present case, the Administration's order that the petitioners undergo training was not unlawful on its face or not a clear and direct violation of a provision of the collective bargaining agreement, such as an order denying the officials of the four Locals the 100 percent official time they were given by the side-bar agreement. From the petitioners' point of view, the most that could be said was that they had an arguable position that under the national agreement they still were entitled to spend all their time on union business. In that situation their refusal to undergo the ordered retraining was insubordinate.

B. The arbitrators correctly rejected the petitioners' contention that the retraining orders were illegal because at the time of their issuance the petitioners were not in a duty status. The argument rests upon the decision of arbitrator Eisenberg directing the Administration to change to LWOP its AWOL charges for "incorrect denial" of leave without pay. As noted, however, the arbitrator's award provided that the conversion of AWOL charges to LWOP "shall not be construed to constitute a finding as to the conduct of any of these ... employees in the circumstances pertaining to any particular AWOL charge."

 In his decision holding that petitioner Higgins was insubordinate in refusing retraining, arbitrator Eisenberg rejected the contention that his earlier award directing the conversion of AWOL to LWOP validated Higgins' refusal to retrain because at the time of the order Higgins was not in a duty status but was on leave without pay. The arbitrator pointed out that Higgins' refusal occurred well before the award and that at the time of that refusal Higgins was in a duty status. In other words, arbitrator Eisenberg held that his ruling directing the change of AWOL to LWOP did not retroactively validate Higgins' refusal to retrain. We have no reason to disagree with arbitrator Eisenberg's

interpretation of the meaning and effect of his own prior decision.

The awards of the arbitrators in both cases are affirmed.

AFFIRMED.