NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3135

KENNETH M. PEDELEOSE,

Petitioner,

v.

DEPARTMENT OF DEFENSE,

Respondent.

Kenneth M. Pedeleose, of Marietta, Georgia, pro se.

Michael N. O'Connell, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were Michael F. Hertz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director.

Appealed from: Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3135

KENNETH M. PEDELEOSE,

Petitioner,

v.

DEPARTMENT OF DEFENSE,

Respondent.

Petition for review of the Merit Systems Protection Board in AT0752060350-R-1.

_____

DECIDED: August 6, 2009

_____

Before RADER, PLAGER, and SCHALL, Circuit Judges.

PER CURIAM.

## DECISION

Kenneth M. Pedeleose petitions for review of the final decision of the Merit Systems Protection Board ("Board") that (1) affirmed his thirty-day suspension for refusal to cooperate in an agency investigation, insubordination, and failure to follow instructions; and (2) rejected his allegation that his suspension was in retaliation for whistleblowing and, thus, in violation of the Whistleblower Protection Act ("WPA"). Pedeleose v. Dep't of Defense, 110 M.S.P.R. 508 (2009) ("Final Decision"). We affirm.

DISCUSSION

I

Mr. Pedeleose is an industrial engineer at the Defense Contract Management Agency ("DCMA"), Lockheed Martin Marietta ("LMM") facility. The circumstances giving rise to his thirty-day suspension began around June of 2005, when Mr. Pedeleose informed another DCMA employee, Gerry Sawyer, that management was planning on firing her. Immediately thereafter, Ms. Sawyer, "sickened" to hear that she was being fired after twenty-six years of Federal service, informed her supervisor that she had decided to retire in order to avoid being fired, and she submitted her retirement application. The DCMA LMM commander, Colonel Nicole Plourde, learned about Ms. Sawyer's application for retirement, as well as the circumstances that had prompted the application. Colonel Plourde assured Ms. Sawyer that she had not been targeted for removal.

Colonel Plourde also learned about rumors concerning the termination of other DCMA employees. She became concerned that these rumors could affect the morale of the employees at the facility and that one of her supervisors was spreading the rumors by disclosing confidential information. Because of these concerns, Colonel Plourde decided to start an investigation and appointed Stacey Scantlebury to conduct the investigation.

After being appointed, Ms. Scantlebury met with Mr. Pedeleose and attempted to interview him. Before Ms. Scantlebury was able to ask a question, however, Mr. Pedeleose questioned the authenticity of her credentials and refused to comply with the investigation. Responding, Colonel Plourde showed Mr. Pedeleose the letter appointing

Ms. Scantlebury and also gave him a letter directing him to cooperate with the investigation. In spite of Colonel Plourde's direct orders, Mr. Pedeleose continued to be uncooperative and refused to answer Ms. Scantlebury's questions.

As a result of his behavior, DCMA suspended Mr. Pedeleose for thirty-days for refusal to cooperate with an investigation, insubordination, and failure to follow instructions. Mr. Pedeleose appealed his suspension to the Board. While Mr. Pedeleose did contest the propriety of his suspension, he did not dispute the events that occurred when Ms. Scantlebury attempted to interview him. Rather, Mr. Pedeleose argued that he was justified in refusing to cooperate. In addition, he contended that DCMA did not suspend him for failure to cooperate, but instead did so in retaliation for his prior whistleblowing and, thus, violated the WPA.

In due course, the Board found that the agency had proven its charges against Mr. Pedeleose and sustained his thirty-day suspension. See Final Decision, 110 M.S.P.R. at 518. In so ruling, the Board explained that Mr. Pedeleose's justifications for disobeying Colonel Plourde's orders did not satisfy the narrow exceptions to the rule that government employees generally cannot disregard an order from a superior. Id. at 517-18. Furthermore, the Board ruled that DCMA had not violated the WPA when it suspended Mr. Pedeleose. Id. at 518-20. Mr. Pedeleose now appeals the Final Decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

II

Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained

without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c); Kewley v. Dep't of Health & Human Servs., 153 F.3d 1357, 1361 (Fed. Cir. 1998).

On appeal, Mr. Pedeleose argues that the Board erred in sustaining his thirty-day suspension and in finding that DCMA did not suspend him in violation of the WPA. He does not, however, contest that he disobeyed several clear orders of Colonel Plourde directing him to cooperate with her investigation. Nor does he argue that the thirty-day suspension was an unreasonable penalty. Rather, as best we can tell, Mr. Pedeleose contends that he was justified in refusing to comply with the investigation because the investigation was somehow illegal. Next, Mr. Pedeleose suggests that, because DCMA's suspension was actually in retaliation for prior whistleblowing, the Board erred regarding his WPA defense. Specifically, Mr. Pedeleose states that the protected disclosures that caused his thirty-day retaliatory suspension were his disclosures to the Inspector General of the Department of Defense ("IG") that: (1) another DCMA employee, Susan VanDerbeck, was targeted for termination because she engaged in whistleblowing and (2) there were numerous problems in a project run by DCMA.

We address Mr. Pedeleose's arguments in turn.

III

A

Because the Board's decision regarding the charges against Mr. Pedeleose is supported by substantial evidence and otherwise in accordance with law, we affirm its decision sustaining the agency's charges against him. Importantly, as mentioned above, Mr. Pedeleose does not dispute the facts surrounding Ms. Scantlebury's

attempts to interview him for purposes of Colonel Plourde's investigation. Indeed, it is quite clear that Mr. Pedeleose flatly refused to answer any of Ms. Scantlebury's questions, doubted her authority as an investigator, and was wholly uncooperative. This was in the face of Colonel Plourde's repeated instructions to cooperate and her showing him the letter granting investigative authority to Ms. Scantlebury. Thus, it is clear that there is substantial evidence supporting the agency's charges of refusal to cooperate with an investigation, insubordination, and failure to follow instructions.

Although Mr. Pedeleose argues that he was justified in refusing to cooperate with the investigation, the Board properly found those arguments unavailing. Absent exceptional circumstances, government employees generally cannot refuse to do work simply because they disagree with a superior and, consequently, failing to comply with their duties is done at the risk of insubordination. See Nagel v. Dep't of Health & Human & Servs., 707 F.2d 1384, 1387 (Fed. Cir. 1983). The evidence of record substantiates that the investigation was never found to violate any law or regulation. See Bigelow v. Dep't of Health & Human Servs., 750 F.2d 962, 966 (Fed. Cir. 1984) (sustaining a disciplinary action for refusing to obey a supervisor because the instruction "was not unlawful on its face [and] not a clear and direct violation of a provision"). In fact, it would be extremely difficult—if not impossible—for Mr. Pedeleose to accurately determine the legality of the investigation, as he did not even give Ms. Scantlebury the opportunity to ask him a single substantive question. As such, Mr. Pedeleose had nothing more than an unsupported subjective belief that the investigation was illegal, which is wholly insufficient for an exception to the general rule above. See id. at 965 ("[T]he orders the petitioners refused to obey were lawful, and the petitioners could not

disobey the orders because of their own view of the legality or propriety of the direction."). Moreover, after asking the IG whether the investigation was illegal or in conflict with other ongoing investigations, the IG clearly and explicitly told Mr. Pedeleose to both comply with Colonel Plourde's requests and answer Ms. Scantlebury's questions.

In sum, the Board's decision regarding the charges against Mr. Pedeleose is supported by substantial evidence and otherwise in accordance with law. We therefore affirm its decision sustaining the charges against Mr. Pedeleose.

B

We now turn to Mr. Pedeleose's contention that the Board erred when it ruled that he had not established reprisal for whistleblowing. Pursuant to 5 U.S.C. § 2302(b), the WPA requires proof of four elements: (1) the acting official has the authority to take, recommend, or approve any personnel action; (2) the aggrieved employee made a protected disclosure; (3) the acting official used his authority to take, or refuse to take, a personnel action against the aggrieved employee; and (4) the acting official took, or failed to take, the personnel action against the aggrieved employee because of the protected disclosure. See Lachance v. White, 174 F.3d 1378, 1380 (Fed. Cir. 1999). The employee must establish "by a preponderance of the evidence that [he or she] made a protected disclosure, that subsequent to the disclosure [he or she] was subject to disciplinary action, and that the disclosure was a contributing factor to the personnel action taken against [them]." Carr v. Soc. Sec. Admin., 185 F.3d 1318, 1322 (Fed. Cir. 1999). If the employee makes the requisite showing, there is still no violation of the

WPA if the agency can "prove by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure." Id.

Addressing first Mr. Pedeleose's disclosure to the IG relating to Ms. VanDerbeck, we hold that substantial evidence supports the Board's decision that this was not a protected disclosure. In order to establish a protected disclosure, the whistleblower must have a reasonable belief that a law, rule, or regulation has been violated. See, e.g., Lachance, 174 F.3d at 1381 (requiring consideration of whether a "disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee" would reasonably conclude that a violation occurred); Horton v. Dep't of the Navy, 66 F.3d 279, 283 (Fed. Cir. 1995) (requiring "that the whistleblower had a reasonable belief that, for example, a rule or regulation had been violated"). Mr. Pedeleose's belief that a violation occurred—namely, that Ms. VanDerbeck was targeted for termination because of her whistleblowing about safety issues—was not reasonable, however. Rather, it was his purely subjective perspective, which he was even told was misguided. See Lachance, 174 F.3d at 1381 ("A purely subjective perspective of an employee is not sufficient even if shared by other employees.").

For example, Mr. Pedeleose learned of Ms. VanDerbeck's potential termination from a former DCMA employee, DeAngeles Davis. Ms. Davis did not learn of this information directly, but instead learned of it from another employee, Ms. Shelton-Thomas. Ms. Shelton-Thomas, in turn, merely heard about a meeting attended by Colonel Plourde and other employees where Ms. VanDerbeck's termination was allegedly discussed. Thus, the record evidence demonstrates that this information was nothing more than highly attenuated gossip. More significantly, Ms. Davis not only told

Mr. Pedeleose about this entire "chain" of gossip, but also that any discussion of terminating Ms. VanDerbeck was due to her inappropriate conduct affecting DCMA's relationship with LMM employees, not due to her whistleblowing. In sum, there is substantial evidence that Mr. Pedeleose knew this information was highly suspect and that he was explicitly told that Ms. VanDerbeck's potential termination was not because of whistleblowing. Mr. Pedeleose's belief to the contrary was therefore not reasonable and, thus, the Board was correct to find that he did not make a protected disclosure concerning Ms. VanDerbeck's potential termination.

Regarding the report that Mr. Pedeleose provided to the IG concerning alleged problems in a program run by DCMA, assuming without deciding that this was a protected disclosure, we affirm the Board's decision that there was clear and convincing evidence that the agency would have suspended Mr. Pedeleose regardless. The Board correctly considered the substantial record evidence and applied the relevant factors, such as: the strength of the evidence supporting suspension; the existence and strength of any motive by DCMA officials to retaliate; and DCMA's actions against non-whistleblowers who were otherwise similarly situated. See Carr, 185 F.3d at 1323. Importantly, the evidence submitted in support of the charge of insubordination and refusal to cooperate with a duly authorized agency investigation was substantial and largely undisputed. In addition, while Mr. Pedeleose argues that similarly situated non-whistleblowers were not suspended, he overlooks a critical distinction—those employees did in fact cooperate with the investigation and, therefore, were in no way "similarly situated." Thus, we cannot say the Board's decision is unsupported by substantial evidence or otherwise not in accordance with law.

We have considered Mr. Pedeleose's other arguments, but found them unpersuasive.

For the foregoing reasons, the final decision of the Board is affirmed.

No costs.