NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**HORTENCIA R. LEIJA,**
*Petitioner,*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent.*

---

2013-3048

---

Petition for review of the Merit Systems Protection Board in Nos. DA0752110588-I-1, DA0353110513-I-1, and DA0752110537-I-1.

---

Decided: September 12, 2013

---

HORTENCIA R. LEIJA, of San Antonio, Texas, pro se.

CORINNE A. NIOSI, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, Assistant Director.

---

Before NEWMAN, PROST, and WALLACH, *Circuit Judges*.

PER CURIAM.

Hortencia Leija appeals the decision of the Merit Systems Protection Board ("Board") affirming her removal from employment with the Department of Veterans Affairs ("VA") and dismissing her restoration appeal for lack of jurisdiction. We affirm the Board's decision that it lacked jurisdiction over Ms. Leija's restoration appeal, but we vacate the Board's affirmance of her removal and remand for further proceedings consistent with our opinion.

I

Hortencia Leija was employed as a Diagnostic Radiological Technologist at the GS-9 level for the VA. In 2008, she injured her left shoulder, and the next year she hurt her right one. The Office of Workers' Compensation Programs ("OWCP") found her injuries to be work-related and compensable. After two periods of approved medical leave, lasting approximately four months and six months, Ms. Leija returned to work fulltime in October 2009. Because of her shoulder injuries, her physician imposed certain medically-necessary restrictions on her activities at work. Due to those limitations, the VA offered Ms. Leija—and she accepted—a series of restricted duty jobs in 2010 that were commensurate with her physical capabilities. Both Ms. Leija and her direct supervisor, Mr. Long, believed that she was performing the duties of a Medical Support Assistant at the GS-4 level by August 2010.

In December 2010, the VA mailed Ms. Leija a formal offer of permanent reassignment as a Medical Support Assistant with pay retained from the GS-9 level. In its letter, the VA informed her that it could ask the OWCP

for a suitability determination of the offer if she refused. It further explained that, if the OWCP found the new position suitable and she continued to refuse the offer, her workers compensation benefits might be terminated and she might face "administrative action." Resp't App. 63. The VA also directed Ms. Leija to complete an enclosed "Acceptance/Declination Statement" ("ADS") form by December 28, 2010. Resp't App. 62. That form provided two options: "voluntarily accept" the offered Medical Support Assistant position or "decline" it. Resp't App. 64.

Ms. Leija did not return the ADS form to the VA. However, according to both her and Mr. Long, she continued working in her "light duty assignment that was comprised of duties of the Medical Support Assistant position." Resp't App. 10.

Despite Ms. Leija's failure to return the ADS form, the VA "issued a Standard Form 52" to officially change her employment "from the Diagnostic Radiological Technician position to the Medical Support Assistant position," while "includ[ing] retained pay." Resp't App. 10-11.[1] The VA also referred its offer to the OWCP for a suitability determination.

On February 14, 2011, the OWCP informed Ms. Leija that it believed the VA's offer was suitable and instructed her that she had "30 days to accept the position or provide

---

[1] The administrative judge found that the Standard Form 52 was issued on January 21, 2011. Resp't App. 10. However, we can find no such form in the documents provided on appeal. A Standard Form 52 does appear in the record though. Resp't App. 71. That document bears an April 2011 date and reflects a request to officially transfer Ms. Leija to the Medical Support Assistant position. *Id.*

a valid reason for not accepting it." Resp't App. 11. Ms. Leija provided a timely response, but the OWCP did not find it "sufficient." *Id.* On April 18, 2011, the office informed Ms. Leija that her workers-compensation benefits would be terminated "based on her refusal of an offer of suitable work." *H.L., & Dep't of Veterans Affairs, S. Tex. Health Care Sys.*, 2012 WL 8595448 at *2 (E.C.A.B. 2012). The VA was notified of the OWCP's decision to terminate her benefits.

Three days prior to the OWCP's decision, on April 15, 2011, Ms. Leija's representative, Mr. Rogers, mailed the VA a letter indicating that she declined the VA's December 2010 offer. In his letter, Mr. Rogers explained that several attempts to discuss the offer with VA representatives failed. Despite those unsuccessful attempts at negotiation, he asserted that Ms. Leija was "back to work" and "willing to accept [a] suitable job as applicable to her current job description." Resp't App. 74. He further argued that Ms. Leija was capable of performing the job duties of a Radiological Technologist with accommodations similar to what other technologists were receiving and that she would be able to return to "full capacity" in the future after physical therapy. Resp't App. 76. To that end, he asked that "she be allowed to continue therapy while working in an accommodated position" and posited that "pay[ing] the difference in salary at a GS-4 level rather [than] hav[ing] Ms. Leija work in her job field is a waste of government spending." *Id.* Mr. Rogers concluded his letter with a request that the VA "revisit the job offer and reoffer one that is compatible to her current job functions that will benefit the employee, patient[s], and [the VA] Imaging Service." *Id.*

In response to Mr. Rogers's letter, the head of Imaging Services "approved a request to Human Resources" on April 18, 2011, "that [Ms. Leija] be terminated." Resp't App. 12. That request, however, was followed by a series

of job offers that the VA provided to Ms. Leija, several of which appear to have been accepted by her.

On April 19, 2011, the VA provided Ms. Leija a "Restricted Duty Job Offer" as a "Medical Support Assistant." Resp't App. 78. The required duties of that position were detailed in the offer and were nearly identical to those identified in the position description included with the VA's December 2010 offer to Ms. Leija for permanent employment as a Medical Support Assistant. *Compare* Resp't App. 78-79, *with* Resp't App. 67-68. Hand written notes on the copy of the restricted duty offer in the record reflect that Ms. Leija refused it and, as a result, was sent home. Resp't App. 80.

Three days later, on April 21, 2011, the VA provided Ms. Leija a new "Restricted Duty Job Offer" as a "Medical Support Assistant" in the VA Imaging Service. Resp't App. 93. Unlike the previous one, Ms. Leija accepted and signed this new offer. *Id.* But she annotated her acceptance with the following: "I am told by Ms. Rubin that this is a temporary job offer." *Id.* The restricted duty job offer included a brief description of the duties required for a Medical Support Assistant that appears to match the position description for the VA's December 2010 offer. *Compare* Resp't App. 93, *with* Resp't App. 67-68. There was one addition to the new offer's description of the duties required by it though. The new offer stated: "No lifting, pushing or pulling more than five (5) pounds. There are plenty of radiology staff, please ask for help as needed." Resp't App. 93.

Then on May 6, 2011, the VA provided Ms. Leija with a "Transitional (Limited) Duty Job Offer for Work-Related Injuries/Illness" in the "Medical Support Assistant" position. Resp't App. 81. Like before, the general description of the job duties required by the offered position were in accord with those identified in the VA's December 2010 offer. *Compare* Resp't App. 81, *with* Resp't App. 67. Ms.

Leija appears to have accepted the offer, which was countersigned by a VA official.  Resp't App. 81.

After Ms. Leija accepted that "transitional" job offer, the VA provided her with yet another "Restricted Duty Job Offer" on May 17, 2011.  Resp't App. 82, 87.  Besides a change in the name of the offered position from "Medical Support Assistant" to "PSA," the duties and responsibilities of the offered position were nearly identical to those detailed in the VA's December 2010 offer.  *Compare* Resp't App. 82-83, *with* Resp't App. 67-68.  One copy of the offer in the record indicates by handwritten note that Ms. Leija refused to accept it.  Resp't App. 84.  A second copy in the record though, reflects Ms. Leija's signature and her supervisor's countersignature.  Resp't App. 87.  That second copy contains several handwritten notes (seemingly made by Ms. Leija), including one that appears to indicate that her acceptance of the offer was conditioned upon "proper training."  Resp't App. 87.

On May 19, 2011, the VA issued a "Notice of Proposed Removal" to Ms. Leija.  It charged her with "failure to accept directed reassignment."  Resp't App. 89.  The VA included the following details of her alleged misconduct.

> By letter dated December, 21, 2010, you were given a written notice of a reassignment to a Medical Support Assistant position as a GS-0679-04 Step 10.  The Department of Labor (DOL), Office of Workers' Compensation Programs (OWCP), determined suitability of the job offer.  On April 15, 2011, your written response from your representative informed the Agency that you had declined the job offer.

*Id.*

Shortly after Ms. Leija received the "Notice of Proposed Removal," her duty station was changed to her home address and her prior pending request for family

medical leave—to care for her elderly mother—was approved.  An oral response hearing to the "Notice of Proposed Removal" was held on June 9, 2011, and the next day, the VA placed Ms. Leija on administrative leave.  Ms. Leija was still on leave when the VA issued a decision on July 11, 2011, terminating her from "federal employment effective July 22, 2011," for "failure to accept a directed reassignment."  Resp't App. 106.  A "Request for Personnel Action" on Standard Form 52 reflects that Ms. Leija was removed from her position as a "MED SUP ASST (TYPING)" pursuant to Chapter 75 for "failure to accept directed assignment."  Resp't App. 108-09.

## II

Ms. Leija filed four appeals with the Board challenging the VA's actions.  She asserted that the VA improperly demoted her to a lower grade job, wrongly terminated her from federal employment, failed to properly restore her to duty as a Diagnostic Radiological Technician following her compensable shoulder injuries, and constructively suspended her without cause by putting her on unrequested leave.

On October 7, 2011, the administrative judge for the Board dismissed her demotion appeal.  The administrative judge explained that the VA "assigned [her] to the GS-4 grade-level" job after the OWCP "determined the . . . position was a suitable job offer to accommodate her work-related injury."  Resp't App. 139.  According to the administrative judge, "rather than a reduction–in-grade action[,] the reassignment was taken to fulfill the [VA]'s restoration obligations," so "all arguments and relief available to [her] will be available under the restoration-based appeal."  *Id.*

On January 30, 2012, the administrative judge rejected Ms. Leija's other appeals.  The administrative judge dismissed her constructive suspension appeal after concluding that the Board lacked jurisdiction over it.  Accord-

ing to the administrative judge, there was no jurisdiction because Ms. Leija "failed to show that she was constructively suspended" since she never withdrew her request for family medical leave. Resp't App. 17-18.

The administrative judge also concluded that there was no Board jurisdiction over Ms. Leija's restoration appeal. The administrative judge explained that the Board has jurisdiction only over non-frivolous restoration claims and that she failed to present a "non-frivolous allegation that she was denied restoration as an employee who has partially recovered from a compensable injury." Resp't App. 16. That was apparent, in the administrative judge's view, because the "reassignment to the Medical Support Assistant position was reasonable"; the permanent offer of reassignment "was found suitable by OWCP"; "retained pay was afforded [to Ms. Leija]"; and, based on facts reflected in the record, Ms. Leija never informed the VA of a note from her doctor dated April 23, 2011, that released her to "full duty." *Id.*

Regarding Ms. Leija's appeal challenging her termination, the administrative judge found that the Board had jurisdiction over it but that it failed on its merits. The administrative judge described the VA's burden in a "removal action based on a refusal to accept a directed . . . reassignment" as "prov[ing] by a preponderance of the evidence that its reassignment decision was based upon legitimate management considerations." Resp't App. 13. The administrative judge concluded that the "Board has consistently held that discipline is warranted for refusing to accept a legitimate directed reassignment and that removal is not an unreasonably harsh penalty for such a refusal." Resp't App. 14. He explained that Ms. Leija's removal was therefore permissible because she "continually rejected" a legitimate reassignment offer, Resp't App. 15; she "acknowledged that [she] could not . . . perform the duties of the Diagnostic Radiological Technician position," Resp't App. 14; she never told the VA that "[her

doctor] cleared her for full duty" in April 2011, Resp't App. 15; and "the evidence show[ed] that the reassignment to the Medical Support Assistant position was taken for a legitimate reason—[Ms. Leija] had permanent lifting restrictions which precluded her from performing the essential duties of her Diagnostic Radiological Technician position," Resp't App. 14.

In addition, the administrative judge reasoned that the legitimacy of the VA's offer was confirmed by "the fact that the OWCP found it . . . suitable" and by the VA's decision to maintain Ms. Leija's level of pay in the reassigned position. Resp't App. 15. The administrative judge noted that "pertinent OWCP regulation" obligates employees to return to suitable employment when offered or face discontinuance of workers-compensation benefits. *Id.*

On March 3, 2012, Ms. Leija filed a petition for Board review of the administrative judge's decision. Subsequent to that petition, the Employees' Compensation Appeals Board ("ECAB") reversed the OWCP's decision to terminate Ms. Leija's workers compensation benefits. *H.L.*, 2012 WL 8595448 at *3. The ECAB summarized certain facts relevant to its decision as follows.

> The [VA] offered [Ms. Leija] the modified position of medical support assistant with pay retention. At the time of the job offer, the record shows that she was performing the job. The [VA] stated that a written job offer had been sent to [her] for an official job assignment with a change to a lower grade with no change in pay. [She] refused to sign a formal acceptance of the job offer, but continued to work in the position on which the job offer was based. The record reveals that she continued to work for the employing establishment in that position until July 11, 2011. On July 11, 2011 the [VA] removed [her] from federal employment

based on her failure to accept a directed assignment.

*Id.* Based in part on those facts, the ECAB concluded that the "OWCP did not meet its burden of proof to terminate [Ms. Leija]'s compensation for refusing suitable work." *Id.*

On October 22, 2012, Ms. Leija submitted the ECAB's decision to the Board as "new important evidence." Pet'r App. Tab 3.

Thereafter, on December 10, 2012, the Board denied Ms. Leija's petition for review and adopted the administrative judge's decision as final. For Ms. Leija's removal appeal, the Board agreed with the administrative judge that "the reassignment was taken for legitimate management reasons, i.e., [she] had permanent lifting restrictions which precluded her from performing the essential duties of her Diagnostic Radiological Technician position." Resp't App. 28. It was Ms. Leija's burden, according to the Board, to rebut that legitimate reason for reassignment by showing that she informed the VA that she was released to full duty. *Id.* That was not a burden she met though because, in the Board's view, the administrative judge correctly found that Ms. Leija did not inform the VA prior to her termination that her doctor approved her medical release to full duty in April 2011. Resp't App. 26-28. The Board also summarily affirmed the administrative judge's decision that there was no jurisdiction over Ms. Leija's restoration or constructive suspension appeals.

In addition, the Board briefly addressed why it refused to consider several documents submitted by Ms. Leijia as new evidence, including those "from her OWCP appeal file." Resp't App. 28. First, it concluded that none were "new" and that Ms. Leija "made no showing that the[] documents were unavailable before the record closed despite her due diligence." *Id.* Second, the Board explained that "the[] documents [were] also not material because they d[id] not show that the agency was aware of

[Ms. Leija's doctor's] work release prior to removing her." *Id.*

## III

Ms. Leija filed a timely appeal with us of the final decision of the Board. The focus of her appeal is somewhat imprecise. She does raise, however, several points that merit attention. First, Ms. Leija explains that she was offered some light duty positions after returning to work and that she accepted them. Pet'r Br. 1. Second, she asserts that, as the ECAB found, the VA "confirmed that [she] was working in the offered [Medical Support Assistant] position, but that she refused to sign the form accepting the job offer." Pet'r Br. 3. Third, she argues that the Board failed to properly consider the fact that she was released to full duty prior to termination. Pet'r Br. 2-3. And last, Ms. Leija posits that the Board's opinion was incorrect in light of the ECAB decision that she submitted as new evidence while her petition for Board review was pending. Pet'r Br. 4.

## IV

We have jurisdiction over Ms. Leija's appeal under 28 U.S.C. § 1295(a)(9). The scope of our review is limited. We must affirm the Board's final decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see Kewley v. Dep't of Health & Human Servs.,* 153 F.3d 1357, 1361 (Fed. Cir. 1998). After careful review of the decision and the record here, we believe that

Ms. Leija's restoration appeal was properly adjudicated by the Board, but her termination appeal was not.[2]

## A.  The Termination Appeal

Ms. Leija was removed from federal employment under the authority granted to the VA in Chapter 75 of the United States Code.  A governmental agency, such as the VA, may discipline and remove an employee under Chapter 75 "for such cause as will promote the efficiency of the service."  5 U.S.C. § 7513(a).  To support taking such adverse action against an employee for committing misconduct, an agency must: (1) "establish by preponderant evidence that the charged conduct occurred"; (2) "show a nexus between that conduct and the efficiency of the service"; and (3) "demonstrate that the penalty imposed was reasonable in light of the relevant factors set forth in *Douglas v. Veterans Admin.*, 5 MSPB 313, 5 M.S.P.R. 280, 307-08 (1981)."  *Malloy v. U.S. Postal Serv.*, 578 F.3d 1351, 1356 (Fed. Cir. 2009); *see King v. Frazier*, 77 F.3d 1361, 1363 (Fed. Cir. 1996); *Miller v. Dep't of the Interior*, 119 M.S.P.R. 438, 441-42 (M.S.P.B. 2013).  Neither the administrative judge nor the Board adequately explained how the VA made those three showings here.

In regard to the first, it is unclear that Ms. Leija committed the misconduct she was charged with—refusal to accept reassignment as a Medical Support Assistant. The administrative judge and the Board provided extensive discussion of how the Medical Support Assistant position and the VA's offer to Ms. Leija for permanent employment in that role were suitable given her medical restrictions known to the VA at the time of her termina-

---

[2]  We do not address the Board's dismissal of Ms. Leija's constructive suspension claim for lack of jurisdiction because she has not raised that decision in her appeal.

tion. But the administrative judge's conclusion that Ms. Leija "continually rejected" a legitimate reassignment offer, Resp't App. 15, does not seem to be supported by substantial evidence in the record. First, when Ms. Leija was removed from federal service for rejecting the VA's offer of employment as a Medical Support Assistant, she was already employed in that position and appears to have been performing the duties of that job at the time of her termination. *See* Resp't App. 10, 108-09. Second, while Ms. Leija formally rejected the VA's December 2010 offer of permanent employment as a Medical Support Assistant, Ms. Leija appears to have subsequently accepted several restricted or transitional job offers from the VA pursuant to which she agreed to be employed as a Medical Support Assistant. *See* Resp't App. 81, 87, 93.

Thus, it appears that, when Ms. Leija was removed from federal service, she was employed as a Medical Support Assistant and performing the duties of that position pursuant to several job offers that she accepted—despite her initial rejection of such employment in the VA's December 2010 offer. While the administrative judge seems to have simply accepted that the charged conduct (refusal of a directed reassignment) occurred because of Mr. Roger's letter to the VA, *see* Resp't App. 11, the administrative judge failed to address the relevant evidence in the record that appears to indicate that Ms. Leija negotiated an offer of employment as a Medical Support Assistant that was acceptable to her and the VA—which is exactly what Mr. Rogers requested in his letter.

There also appears to be scant evidence that the VA made its second required showing here—that a nexus existed between Ms. Leija's apparent refusal of the directed reassignment and the efficiency of the VA. The administrative judge never directly discussed whether such a nexus existed. Instead, the administrative judge appears to have relied solely on several Board cases in

which refusal to accept a reassignment was found to affect the efficiency of an agency. Resp't App. 14. In those cases, however, a refusal to accept reassignment was accompanied by absenteeism from the new position.[3] The principle applied in those cases is unremarkable. As we have specifically held, "any sustained charge of AWOL [(absent without authorized leave)] is inherently connected to the efficiency of the service." *Bryant v. Nat'l Sci. Found.*, 105 F.3d 1414, 1417 (Fed. Cir. 1997).

That legal assumption does not seem to apply here though because absenteeism by Ms. Leija does not appear to be an issue. The administrative judge did not find that she was AWOL after refusing reassignment. With the exception of one unclear handwritten annotation, *see* Resp't App. 80, the record does not reveal any evidence of unauthorized leave by Ms. Leija. Rather, as the administrative judge noted, Ms. Leija and her supervisor both agreed that she performed the duties required of the Medical Support Assistant position even though she declined to voluntarily accept it.[4] Resp't App. 10.

---

[3]    *See Cooke v. U.S. Postal Serv.*, 67 M.S.P.R. 401, 407-08 (M.S.P.B. 1995) (employee removed after he "did not report for work to either of [two newly] assigned positions") *aff'd*, 73 F.3d 380 (Fed. Cir. 1995); *Nalbandian v. Dep't of the Interior*, 25 M.S.P.R. 691, 695 (1985) (employee removed after refusing to move for newly assigned position in a different state); *Else v. Dep't of Justice*, 3 M.S.P.R. 397, 398 (M.S.P.B. 1980) (employee removed for "refusal to accept the reassignment, and for absence without leave from the new position").

[4]    Reviewing similar evidence, the ECAB reached an identical conclusion. *H.L.*, 2012 WL 8595448 at *3 ("The record establishes that [Ms. Leija] had actual earnings at the [VA] since she was performing the duties of the of-

Accordingly, it is unclear from the record how the efficiency of the service was affected by Ms. Leija's initial rejection of permanent reassignment as a Medical Support Assistant. Despite the fact that she did not want the job, Ms. Leija was reassigned by the VA to the position and performed the duties required by it. Had Ms. Leija refused to perform her job, been absent without leave, or committed some egregious misconduct, then the impact on the efficiency of the VA would be much clearer.[5] But limited to the record before us, we cannot determine whether the VA has adequately proven the existence of the required nexus between Ms. Leija's conduct and the efficiency of the VA.

Last, we do not see how the administrative judge properly considered the *Douglas* factors to conclude that removal of Ms. Leija was a reasonable penalty for the misconduct she may have committed. The administrative

---

fered position. In correspondence to OWCP, the [VA] acknowledged that [she] was working in the offered position, but that she refused to sign the form accepting the offered job.").

[5]     *See, e.g, Walley v. Dep't of Veterans Affairs*, 279 F.3d 1010, 1013 (Fed. Cir. 2002) (unauthorized absences prevented restoration claim), *abrogated on other grounds by Garcia v. Dep't of Homeland Sec.*, 437 F.3d 1322 (Fed. Cir. 2006) (en banc); *Bryant*, 105 F.3d at 1417 (holding that an employee's unauthorized absence justified removal by serving the efficiency of the service); *Cooke*, 73 F.3d 380 (affirming removal after an employee refused a reassignment and was AWOL); *Wright v. U.S. Postal Serv.*, 42 F.3d 1410 (Fed. Cir. 1994) (same); *Miller*, 119 M.S.P.R. 438 (collecting cases in which refusal to accept and perform reassignments supported removal for promoting the efficiency of the service).

judge's consideration of *Douglas* seems to have been limited to a single citation to the case. While such terse reference to *Douglas* might suffice when its application is overwhelmingly clear, it is inadequate here.

The VA asserts that reassigning Ms. Leija was in the interest of the service because Ms. Leija could not perform the job duties of a Diagnostic Radiological Technician but seemingly could perform the duties required of a Medical Support Assistant. Resp't Br. 11-12. Apparently, in accord with that interest, the VA officially reassigned Ms. Leija to the Medical Support Assistant position. It then provided her several job offers in that position for transitional or restricted duty that the record indicates she accepted. And while employed as a Medical Support Assistant, Ms. Leija seems to have performed the duties required by the job. If indeed Ms. Leija was dutifully and continuously performing as a Medical Support Assistant, agreed to the reassignment after continued negotiation, and was on the road to a full recovery through physical therapy (as asserted by Mr. Rogers in his April 15, 2011 letter), it is difficult to understand how the VA's exercise of managerial discretion to remove Ms. Leija was reasonable and served the interest of the VA. On the record here, it was therefore error for the Board to affirm Ms. Leija's removal without applying the *Douglas* factors to determine if the VA acted reasonably.

Furthermore, thoroughly addressing the *Douglas* factors in this case is of particular import because Ms. Leija appears to have followed the long-standing guidance we and the Board have provided to federal employees who wish to challenge agency orders. We and the Board have explained that such employees generally should not disregard an order with which they disagree—including one related to reassignment; they should instead follow the order and then challenge it through appropriate

administrative channels.[6]   The record appears to show
that Ms. Leija followed that advice.  Despite her unwill-
ingness to voluntarily accept reassignment as a Medical
Support Assistant, Ms. Leija seemingly performed the
duties of her new position as ordered and pursued admin-
istrative relief.  A thorough discussion of the *Douglas*
factors seems necessary to explain why Ms. Leija's appar-
ent adherence to our precedent and that of the Board was
inappropriate and merited her removal from federal
service.

On the record here, it simply is unclear how the VA
met its evidentiary burden to sustain the removal of Ms.
Leija under Chapter 75.  The record before us does not

---

[6]    *See, e.g*, *New v. Dep't of Veterans Affairs*, 142 F.3d
1259, 1264 (Fed. Cir. 1998) ("[A]n employee is required to
comply with instructions from her agency acting within
its authority, unless obedience would place her in a clear-
ly dangerous circumstance."); *Bigelow v. Dep't of Health &
Human Servs.*, 750 F.2d 962, 965-66 (Fed. Cir. 1984)
("Unless [a] transfer is, in effect, a discharge, [an] em-
ployee has no right simply to walk out; he must accept the
orders of his superior, even if felt to be unjust, until
relieved of them by judicial or administrative action.");
*Cooke*, 67 M.S.P.R. at 407-08 (agreeing that "even if the
assignment was improper, the appellant's recourse was to
obey by performing the duties of his new position and
then appeal the propriety of the assignment," even if the
Board's ultimately found the reassignment improper,
because "[t]he appellant's conduct was not protected by
either privilege or a legitimate concern that it would
cause him irreparable harm"); *Taylor v. Dep't of Health &
Human Servs.*, 40 M.S.P.R. 106, 112 (M.S.P.B. 1989) ("If
the appellant believed that her reassignment was im-
proper, her recourse was to report for duty and grieve
while working."), *aff'd*, 891 F.2d 299 (Fed. Cir. 1989).

adequately reveal whether she actually declined reassignment as charged, how her actions negatively affected the efficiency of the VA, or how her removal was a reasonable penalty for the charged misconduct. We therefore vacate the Board's affirmance of Ms. Leija's termination and remand for the Board to further discuss or develop the factual and legal basis necessary to properly adjudicate her termination appeal.

## B. The Restoration Appeal

The administrative judge dismissed Ms. Leija's restoration appeal for lack of jurisdiction after finding that she failed to present a non-frivolous restoration claim. The administrative judge cited two primary reasons to support dismissal: (1) Ms. Leija failed to inform the VA prior to her termination that she was capable of performing all the job duties of a Diagnostic Radiological Technician; and (2) the OWCP had declared that the Medical Support Assistant position was suitable. Based upon the facts in the record at the time of the administrative judge's initial determination, we see no error in the administrative judge's decision that jurisdiction was lacking. There is substantial evidence to support the administrative judge's factual finding that Ms. Leija did not inform the VA prior to her termination that she was capable of performing all the job duties of a Diagnostic Radiological Technician. As the administrative judge noted, there is a distinct lack of testimony by Ms. Leija or argument by Mr. Rogers that she provided her doctor's written opinion to the VA. In addition, at the time of the administrative judge's decision, the OWCP had declared the VA's December 2010 job offer to be suitable. The administrative judge recognized that, once issued, "[d]ecisions on the suitability of an offered position are within the exclusive domain of the OWCP." *New*, 142 F.3d at 1265. Thus, based on the facts as found by the administrative judge and the state of Ms. Leija's OWCP appeal at the time of the administrative judge's decision, we cannot say that the administrative

judge's dismissal of Ms. Leija's restoration appeal for lack of jurisdiction was erroneous.

Furthermore, we see no error in the Board's decision to adopt the administrative judge's opinion despite being informed of the ECAB's reversal of the OWCP's suitability determination. Ms. Leija provided the ECAB's opinion to the Board while her petition for review was pending. The Board declined to consider it, however, after finding that the "documents from [Ms. Leija's] OWCP appeal file" were untimely submitted and immaterial. Resp't App. 28. Ms. Leija argues that the Board's decision is incorrect because it never considered the import of the ECAB's reversal to her restoration claim. Pet'r Br. 3-4; *see* Resp't App. 28-29. Clearly, Ms. Leija could not have submitted the ECAB's opinion to the Board while the record was open. But the Board was correct to find that the ECAB's decision was nevertheless irrelevant to Ms. Leija's restoration appeal.[7]

The effect of the ECAB's reversal could have been to eliminate, as a matter of law, an OWCP suitability determination that would compel Ms. Leija to accept the Medical Support Assistant position offered by the VA. *See New*, 142 F.3d at 1265. However, Ms. Leija "returned to work and never asserted that the [VA]'s accommodation did not comply with her physician's instructions" prior to her termination. *Walley*, 279 F.3d at 1021. And, as the administrative judge found, Ms. Leija did not inform the VA that she could perform the duties of a Diagnostic Radiological Technician prior to her termination. Therefore, given the facts here, the ECAB's reversal was immaterial to Ms. Leija's restoration claim because an OWCP suitability determination was "not a necessary predicate

---

[7] On consideration during remand, the Board can consider the import of the ECAB's reversal to the merits of Ms. Leija's termination appeal.

to [Ms. Leija's] obligation to return to work," *Walley*, 279 F.3d at 1021, and—as the Board reasoned—"do[es] not show that the [VA] was aware of . . . [Ms. Leija's] work release [to full duty] prior to removing her," Resp't App. 28.  Thus, we see no error in the Board's adjudication of Ms. Leija's restoration appeal.

V

We affirm the Board's dismissal of Ms. Leija's restoration appeal, vacate the Board's denial of Ms. Leija's termination appeal, and remand for proceedings consistent with our opinion.

**AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED**