**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2014 MSPB 56**

Docket No. SF-0752-14-0199-I-1

**Patrick G. Hollingsworth,**

**Appellant,**

**v.**

**Department of the Air Force,**

**Agency.**

July 23, 2014

Patrick G. Hollingsworth, North Las Vegas, Nevada, pro se.

Basil R. Legg, Joint Base Andrews, Maryland, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1     The appellant has filed a petition for review of the initial decision that affirmed his removal for tardiness. Because the agency failed to prove that the appellant was tardy, we REVERSE the initial decision. The removal is NOT SUSTAINED.

BACKGROUND

¶2     The appellant was a GS-05 Secretary (Office Automation) for the agency. Initial Appeal File (IAF), Tab 1 at 2, Tab 4 at 11. Effective November 22, 2013, the agency removed him on a charge of tardiness based on a total of 7 hours and

30 minutes of absence without leave (AWOL) incurred during four separate instances between September 6 and October 7, 2013. IAF, Tab 4 at 11-13, 24-25. In arriving at the removal penalty, the deciding official considered, among other things, the appellant's substantial history of progressive discipline for attendance-related problems. *Id*. at 12, 15, 26.

¶3      The appellant filed a Board appeal and waived his right to a hearing.[1] IAF, Tab 1 at 3-4. The administrative judge affirmed the removal on the written record. IAF, Tab 10, Initial Decision (ID) at 1, 14. He found that the appellant was scheduled to report for duty at 8:30 a.m., but he reported 1 hour late on September 9, 2013, 2 hours late on September 13, 2013, and 2 hours late on October 7, 2013. ID at 4-5; IAF, Tab 9 at 22-23. The administrative judge also found that the appellant would have had to report at 8:00 a.m. on September 6, 2013, in order to meet his 80-hour requirement for the pay period, and that the appellant reported 30 minutes late on that date. ID at 4; IAF, Tab 9 at 22. The administrative judge therefore sustained the charge.[2] ID at 5.

## ANALYSIS

¶4      An agency is not required to affix a label to a charge but may simply describe actions that constitute misbehavior in narrative form in its charge letter; however, if the agency chooses to label an act of alleged misconduct, then it must

---

[1] In addition to his removal, it appears that the appellant attempted to challenge his prior 1-, 5-, and 14-day suspensions. IAF, Tab 1 at 4, Tab 4 at 35-36, 42-43, 49-50. None of these actions is directly appealable to the Board because the Board's chapter 75 jurisdiction extends only to suspensions of more than 14 days. 5 U.S.C. § 7512(2); *Stewart v. Department of Defense*, 82 M.S.P.R. 649, ¶ 15 (1999).

[2] Although the administrative judge found that the appellant was tardy for a total of 5 hours and 30 minutes rather than the 7 hours and 30 minutes that the agency specified in its charge, he did not find this discrepancy to be material. ID at 5; IAF, Tab 4 at 24; *cf. Senior v. U.S. Postal Service*, 85 M.S.P.R. 283, 289 (2000) (the Board may sustain a charge of AWOL even when the agency fails to prove that the appellant was AWOL for the entire period).

prove the elements that make up the legal definition of the charge, if any. *Otero v. U.S. Postal Service*, 73 M.S.P.R. 198, 202 (1997). In this case, the agency charged the appellant with "tardiness." IAF, Tab 4 at 24. The Board has not established the elements for a charge of tardiness. However, it is not a generic charge such as "improper conduct" or "conduct unbecoming" that does not require specific elements of proof. *Cf. Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶ 9 (2010) (a charge of "improper conduct" or "conduct unbecoming" has no specific elements of proof; it is established by proving that the employee committed the acts alleged in support of the broad label). A plain and ordinary understanding of the term "tardiness" implies unexcused lateness. *Merriam–Webster's Collegiate Dictionary* 1202 (10th ed. 2002) (to be tardy is to be "delayed beyond the expected or proper time").

¶5        In this case, the administrative judge implicitly analogized the charge of tardiness with a charge of AWOL. ID at 3. He found that to prove a charge of tardiness, the agency must show that: (1) the employee was scheduled for duty; (2) the employee was late for duty for the time charged; and (3) either the employee's absence was not authorized or his request for leave was properly denied. ID at 3; *cf. Boscoe v. Department of Agriculture*, 54 M.S.P.R. 315, 325 (1992) (to prove an AWOL charge, an agency must show that the employee was absent from duty, and either that his absence was not authorized or that his request for leave was properly denied). Neither party challenges the administrative judge's construction of the charge, and we agree that it is appropriate. It is consistent with the Federal Circuit's construction of a "tardiness" charge in *Bryant v. National Science Foundation*, 105 F.3d 1414, 1416-17 (Fed. Cir. 1997), and the Board's construction of the same in *Mahnken v. U.S. Postal Service*, 34 M.S.P.R. 1, 3-5, *aff'd*, 835 F.2d 871 (Fed. Cir. 1987) (Table). It is also consistent with the general principle that an agency cannot discipline an employee for approved absences. *See Cook v. Department of the Army*, 18 M.S.P.R. 610, 611-12 (1984); *Watson v. U.S. Postal Service*,

13 M.S.P.R. 56, 58 (1982). The appellant does not dispute his arrival times on the days in question or directly challenge the appropriateness of the removal penalty for the sustained charge. He disputes only whether the charge should be sustained at all—specifically, whether the arrival times constituted tardiness within the parameters of his flexible work schedule.

¶6        The administrative judge adjudicated this issue as an affirmative defense of harmful error or action taken not in accordance with the law, for which the appellant bears the burden. ID at 6-11; IAF, Tab 7 at 4-5; *see* 5 U.S.C. § 7701(c)(2)(A), (C); 5 U.S.C. § 1201.56(a)(2)(iii). However, we conclude that it is better construed as an argument that the agency failed to meet its burden of proving an element of its charge, i.e., that the appellant was scheduled to report for duty before the arrival times at issue. *See* 5 U.S.C. § 7701(c)(1)(B) (an agency bears the burden of supporting a chapter 75 adverse action by preponderant evidence); 5 C.F.R. § 1201.56(a)(1)(ii) (same).

¶7        As explained above, the only dispute in this case pertains to whether the appellant was required to be on duty during the periods for which the agency carried him in AWOL status. For the reasons explained below, we find that the agency failed to prove that he was.

¶8        The parties agree that the appellant was subject to a "Maxiflex" schedule. IAF, Tab 8 at 4, Tab 9 at 5, 21. The Department of Defense (DOD) defines such schedules as follows:

> Maxiflex. Maxiflex is a flexible work schedule that contains core hours on fewer than 10 work days in the biweekly pay period and in which an employee has a basic work requirement of 80 hours for the biweekly pay period. The employee may vary the number of hours worked on a given workday or the number of hours each week, within the limits established for the organization.

DOD Financial Management Regulation (FMR) 7000.14-R, Volume (Vol.) 8, Chapter (Ch.) 2 at 8 (June 2013).[3] One limit that the agency placed on the appellant's schedule was that he needed to perform all of his work between 7:00 a.m. and 5:00 p.m., Monday through Friday. IAF, Tab 8 at 15, Tab 9 at 21. Although the appellant alleges that this limitation violated the applicable collective bargaining agreement and OPM's regulations regarding flexible schedules, IAF, Tab 1 at 6, we find that it is consistent with the agency's regulation regarding Maxiflex schedules, with OPM's Handbook on Alternative Work Schedules, and with the provisions of the applicable collective bargaining agreement recognizing management's authority to "stabilize employees' work schedules within the administrative work week," IAF, Tab 9 at 26. We find no basis to conclude that this limit on the appellant's work schedule was improper.

¶9      The agency also argues that the appellant was required to report for duty no later than 8:30 a.m. each day because that is the latest that he could arrive at work and complete an 8-hour day with a 30-minute lunch break by 5:00 p.m. IAF, Tab 9 at 9, 21. As explained above, the tardiness charge was premised, in large part, on this 8:30 a.m. reporting time. IAF, Tab 4 at 24. For the following reasons, we find that the agency failed to establish by preponderant evidence that the appellant was required to report to work by 8:30 a.m.

¶10      We agree with the appellant that the agency failed to show that it designated "core hours" for his work schedule. Petition for Review (PFR) File, Tab 1 at 5. Under the Office of Personnel Management's Handbook on

---

[3] Although this is a DOD regulation, it purports to apply to all entities organized under the DOD, including the appellant's employing agency, the Department of the Air Force. DOD FMR 7000.14-R, Introduction at 3. Neither party disputes the applicability of this regulation. *See* IAF, Tab 9 at 21. The definition of a Maxiflex schedule in the DOD FMR is the same as that in the Office of Personnel Management's (OPM) Handbook on Alternative Work Schedules, http://www.opm.gov/policy-data-oversight/pay-leave/reference-materials/handbooks/alternative-work-schedules/ (last visited July 7, 2014).

Alternative Work Schedules, http://www.opm.gov/policy-data-oversight/pay-leave/reference-materials/handbooks/alternative-work-schedules/, "core hours" are "[t]he time periods during the workday, workweek, or pay period that are within the tour of duty during which an employee covered by a flexible work schedule is required by the agency to be present for work." Nowhere in the agency's submissions do the words "core hours" appear. Arguably, under the agency's theory of the case, the appellant had de facto core hours of 8:30 a.m. to 3:30 p.m. because he would always need to be present during these times in order to complete an 8-hour workday within the hours of 7:00 a.m. and 5:00 p.m. However, this is inconsistent with the agency's definition of "Maxiflex," which provides that such schedules contain core hours on fewer than 10 work days in the biweekly pay period. DOD FMR 7000.14-R, Vol. 8, Ch. 2 at 8. This is also inconsistent with how the agency treated the appellant's attendance during the pay period spanning August 25 through September 7, 2013. After he worked just 7 hours and 30 minutes on September 5, 2013, the agency charged him AWOL only when he failed to make up the deficiency by the end of the pay period. IAF, Tab 4 at 62-63, Tab 9 at 22.

¶11    Furthermore, the two agency memoranda purporting to inform the appellant of his work schedule are confusing at best. The first, dated January 17, 2012, states that "Maxiflex allows flexible start/stop times," and that the appellant's "Current Work Schedule is [8:30 a.m.] to [5:00 p.m.] with 30 minute lunch."[4] IAF, Tab 8 at 14. This memorandum is internally contradictory because it states that the appellant has flexible start and stop times but also appears to set forth a fixed work schedule. *Id.* It is also inconsistent with a February 1, 2013

---

[4] The record also contains two notices of proposed suspension and a progress review worksheet that similarly state that the appellant's "normal" or "current" work schedule was 8:30 a.m. to 5:00 p.m. IAF, Tab 4 at 31, 37, 53.

memorandum, which states only that the appellant will "normally" work an 8-hour day within the hours of 7:00 a.m. and 5:00 p.m. *Id*. at 15.

¶12        Based on this confusing and contradictory evidence and the agency's failure to show that it designated any core hours for the appellant, we find that it failed to show that he was scheduled to report for duty at 8:30 a.m. each day as alleged. Because the agency failed to show that the appellant was scheduled to report for duty by a specific time, we find that it failed to prove that the appellant was tardy on September 9, 2013, September 13, 2013, or October 7, 2013. IAF, Tab 4 at 24.

¶13        The agency's theory of tardiness for September 6, 2013, is somewhat different. That was the last date of the 80-hour pay period, and the appellant had only accounted for 71 hours and 30 minutes of work and leave leading up to that date. *Id*. at 62-63; IAF, Tab 9 at 22. Thus, the agency reasons that the appellant would have had to arrive at work no later than 8:00 a.m. in order to complete 8 hours and 30 minutes of work by 5:00 p.m. and to meet his 80-hour pay period requirement. IAF, Tab 9 at 22. The appellant failed to meet this requirement and was charged AWOL for 30 minutes because he did not report until 8:37 a.m. IAF, Tab 4 at 62, Tab 9 at 22.

¶14        We disagree with the agency's theory. First, as explained above, the agency failed to establish that the appellant had any particular time, scheduled in advance, by which he was required to report to work. The practical matter of having to report at 8:00 a.m. in order to log 8 hours and 30 minutes of work time on a given date does not equate to being scheduled to report at that time. Second, we disagree with the basic premise that the appellant failed to meet his 80-hour pay period requirement because he was "late" for work 1 day. Although the appellant could have met his 80-hour requirement by working from 8:00 a.m. to 5:00 p.m. on September 6, 2013, he could have met the requirement in other ways as well, such as working more hours on another day or requesting and obtaining leave to cover the deficiency. In other words, the appellant fell short of his

80-hour requirement not because of his arrival time on the last day of the pay period but because of the sum of his actions throughout the entire pay period. We therefore find that the appellant was not scheduled to report for duty at 8:00 a.m. on September 6, 2013, and, consequently, that the agency failed to show that he was tardy on that date.

¶15 This case is not about whether the agency has the authority to set the appellant's work schedule or to place limits on any flexible schedule.[5] Rather, this case concerns what schedule the agency actually sets for the appellant. As explained above, the agency failed to provide sufficient evidence for us to make a finding on the issue. *Supra* ¶¶ 10-12. The agency itself does not seem to comprehend the appellant's work schedule clearly, as it submitted evidence showing variously that the appellant was scheduled to work from 8:30 a.m. to 5:00 p.m. every weekday, that he was scheduled to work 8 hours per day any time between 7:00 a.m. and 5:00 p.m. each weekday, and that he was scheduled to complete 80 hours of work in each biweekly pay period as long as he did so on weekdays between 7:00 a.m. and 5:00 p.m. *Supra* ¶¶ 8-12. Also, as explained above, the agency's charge appears to be premised on two conflicting theories of what the appellant's work schedule was. *Supra* ¶ 10. For these reasons, the charge and the removal are not sustained.

## ORDER

¶16 We ORDER the agency to retroactively cancel the appellant's removal and to restore the appellant effective November 22, 2013. *See Kerr v. National*

---

[5] Because we reverse the removal on other grounds, we do not reach the appellant's argument that, because he had a Maxiflex schedule, designation of his absences due to tardiness as AWOL was coercion that was prohibited by 5 U.S.C. § 6132. PFR File, Tab 1 at 5-6. Under that provision, an employee may not intimidate, threaten, or coerce another employee based on his use of a flexible schedule as provided for in chapter 61 of Title 5.

*Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶17    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act and/or Postal Service Regulations, as appropriate, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶18    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and to describe the actions it took to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶19    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision in this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶20    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the

Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

¶21        This is the final decision of the Merit Systems Protection Board in this appeal.  Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

**NOTICE TO THE APPELLANT
REGARDING YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set out at Title 5 of the United States Code (U.S.C.), sections 7701(g), 1221(g), 1214(g) or 3330c(b); or 38 U.S.C. § 4324(c)(4).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1202.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your attorney fees motion with the office that issued the initial decision on your appeal.

**NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS**

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit.  You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and

that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right.  It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court.  The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.



| | **DFAS CHECKLIST** |
|---|---|
| | **INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |

AS CHECKLIST: INFORMATION REQUIRED BY IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES
**CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:**

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

    a. Outside earnings with copies of W2's or statement from employer.
    b. Statement that employee was ready, willing and able to work during the period.
    c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a.  Employee name and social security number.
   b.  Detailed explanation of request.
   c.  Valid agency accounting.
   d.  Authorized signature (Table 63)
   e.  If interest is to be included.
   f.  Check mailing address.
   g.  Indicate if case is prior to conversion.  Computations must be attached.
   h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2.  Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3.  Outside earnings documentation statement from agency.

4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.

5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a.  Must provide same data as in 2, a-g above.
   b.  Prior to conversion computation must be provided.
   c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.