Kimberly A. BRYANT, Petitioner,

v.

NATIONAL SCIENCE FOUNDATION,
Respondent.

No. 96–3121.

United States Court of Appeals,
Federal Circuit.

Jan. 29, 1997.

Frederic W. Schwartz, Jr., Washington, D.C., argued for petitioner.

Lydia K. Griggsby, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., argued for respondent. Also on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Sharon Y. Eubanks, Deputy Director.

Before RICH, CLEVENGER, and BRYSON, Circuit Judges.

CLEVENGER, Circuit Judge.

Kimberly A. Bryant (Ms. Bryant) appeals from the December 21, 1995, order of the Merit Systems Protection Board (Board), Docket No. DC0752950508–I–1, which adopted the initial decision of the administrative judge. In that initial decision, the administrative judge sustained the decision of the National Science Foundation (NSF) to remove Ms. Bryant from service due to chronic tardiness. We affirm.

I

Before her removal, Ms. Bryant was employed as a Payroll and Fellowship Technician (GS–544–05) in the Payroll Section of the NSF's Division of Financial Management. Her division participated in a version of the NSF's Flexitime Program under which employees with fixed work schedules "may occasionally elect to begin their work day within 15 minutes before or after their scheduled start work time without supervisory approval." Thus, although Ms. Bryant had a fixed work schedule that began at 7:30 a.m. and ended at 4:00 p.m., she could begin her work day between 7:15 a.m. and 7:45 a.m.

By letter dated May 20, 1994, Ms. Bryant's supervisor, Ms. Plociennik, informed her that due to numerous instances of tardiness, she would no longer be permitted to vary her starting time by the 15 minutes afforded under the Flexitime Program. The letter informed Ms. Bryant that, in accordance with NSF policy, she would be charged a minimum of one hour absence without leave (AWOL) each time she reported to work late. This approach would continue for three months, at which point her situation would be re-evaluated. In the meantime, the letter approved Ms. Bryant's request to change her scheduled start time to 7:45 a.m., in order to enable Ms. Bryant to improve her attendance.

Despite this action, Ms. Bryant was tardy a total of 33 times between May 24, 1994, and September 1, 1994, most of which resulted in charges of AWOL. Because of this pattern, by letter dated September 16, 1994, Ms. Plociennik informed Ms. Bryant of her decision to continue the policy set forth in the May 20, 1994, letter. Furthermore, by a separate letter on the same date, Ms. Plociennik proposed that Ms. Bryant be suspended for five days for the 33 instances of tardiness. The NSF ultimately suspended Ms. Bryant for five days from October 24–28, 1994. In a letter dated October 21, 1994, Ms. Plociennik approved another request by Ms. Bryant to change her start time to 8:00 a.m.

Despite the five-day suspension and the changed starting time, Ms. Bryant's attendance did not improve. Between October 3, 1994, and February 1, 1995, Ms. Bryant was tardy a total of 23 times resulting in a total of 22 1/4 hours of AWOL. Based on her long-standing pattern of tardiness and failure to heed lesser disciplinary measures, the NSF removed her from service on April 7, 1995.

Ms. Bryant forwarded three main arguments in appealing the NSF's decision to the Board. First, she contended that the charged offense of tardiness should be overturned because: (i) the NSF should have excused most of the instances of tardiness, which were of short duration; and (ii) the NSF's action violated the Family and Medical Leave Act. In its initial decision, the Board's administrative judge determined that although the NSF could have excused Ms. Bryant's tardiness, it was under no obligation to do so. Indeed, the record showed that the NSF had endured Ms. Bryant's tardiness for quite some time. The administrative judge also determined that there existed no merit in Ms. Bryant's Family and

Medical Leave Act argument. At no time did Ms. Bryant request leave under that Act, and the record indicated that the sole basis for her removal was her inability to report to work on time. Accordingly, the administrative judge sustained the charge of tardiness.

Second, Ms. Bryant argued that even if the charge of tardiness was proper, the NSF had failed to prove that the offense harmed the efficiency of the service. Specifically, she argued that the automatic nexus that normally exists between a charge of AWOL and the efficiency of the service is inappropriate in the context of a flex-time program. Absent this automatic nexus, the record contained insufficient proof that her tardiness harmed her division. The administrative judge rejected this argument, primarily because Ms. Bryant was not allowed to participate in the flex-time program.

Finally, Ms. Bryant argued that the NSF had not considered the relevant factors mandated by *Douglas v. Veterans Admin.*, 5 MSPB 313, 5 M.S.P.R. 280 (1981). The administrative judge also rejected this argument and concluded that the NSF's action was both reasonable and appropriate based on *Douglas* and Ms. Bryant's history of chronic lateness.

Ms. Bryant appeals from the Board's order denying review of the administrative judge's decision, which became final on December 21, 1995. We have jurisdiction to review her case pursuant to 28 U.S.C. § 1295(a) (1994).

## II

Pursuant to statute, we must affirm the Board's decision unless it is found to be:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;

(2) obtained without procedures required by law, rule or regulation having been followed; or

(3) unsupported by substantial evidence.

5 U.S.C. § 7703(c) (1994); *see, e.g., Rosete v. Office of Personnel Management,* 48 F.3d 514, 516 (Fed.Cir.1995). Moreover, we cannot disturb the penalty chosen by the agency unless it is so "outrageously disproportion-

ate" to the charged offense in light of all relevant factors as to constitute an abuse of discretion. *Yeschick v. Department of Transp.,* 801 F.2d 383, 384–85 (Fed.Cir.1986).

An agency must establish three things when it takes an adverse action against an employee. First, it must prove, by a preponderance of the evidence, that the charged conduct occurred. 5 U.S.C. § 7701(c)(1)(B) (1994). Second, the agency must establish a nexus between the conduct and the efficiency of the service. 5 U.S.C. § 7513(a) (1994); *Hayes v. Department of the Navy,* 727 F.2d 1535, 1539 (Fed.Cir.1984). Third, it must demonstrate that the penalty imposed was reasonable. *See Douglas,* 5 M.S.P.R. at 306–07.

On appeal, Ms. Bryant renews the arguments she made to the administrative judge concerning each of these three requirements. We address each argument in turn.

## A

Under the NSF's AWOL policy, a supervisor may excuse individual instances of tardiness of less than one hour for good cause, but may also charge an employee a minimum of one hour of AWOL, Leave Without Pay, or Annual Leave if the employee's excuse is unacceptable. Ms. Bryant contends that the NSF should have either excused her short periods of tardiness or treated them as Leave Without Pay or Annual Leave.

The administrative record establishes that Ms. Bryant was late on 23 occasions between October 3, 1994, and February 1, 1995. Of these 23 occasions, 19 were due to transportation problems related to commuting to work. An agency, however, is not required to accommodate transportation problems. *See Roberson v. Veterans Admin.,* 27 M.S.P.R. 489, 492 (1985). Moreover, the NSF tolerated Ms. Bryant's absences for quite some time prior to instituting more stringent measures. The NSF provided both written and oral counseling, imposed a suspension, and instituted several

schedule changes at Ms. Bryant's request.[1] Despite these accommodations, Ms. Bryant failed to report to work on time regularly. Under these circumstances, we cannot say that the Board erred in sustaining the NSF's charges of tardiness.

B

As stated above, an adverse action may be taken only if it is necessary to promote the efficiency of the government—*i.e.,* there must exist a nexus between the charged offense and the efficiency of the government. This nexus requirement in the context of tardiness was discussed by this court in *Davis v. Veterans Admin.,* 792 F.2d 1111 (Fed.Cir.1986). In that case, Ms. Davis was removed from her position as Licensed Practical Nurse because she was AWOL from August 5 through August 13, 1984. She appealed the agency's action, arguing that there was no proof of nexus between the charge of AWOL and the efficiency of the service. The presiding official held that a nexus existed, relying on decisions by the MSPB that an unauthorized absence by its very nature disrupts the efficiency of the service. In agreeing with the Board, this court explained:

> Ms. Davis' argument that an employee's AWOL has no effect on the efficiency of the service is frivolous. An essential element of employment is to be on the job when one is expected to be there. To permit employees to remain away from work without leave would seriously impede the function of an agency. An unexcused absence imposes burdens on other employees and, if tolerated, destroys the morale of those who meet their obligations....

For these reasons, we hold that any sustained charge of AWOL is inherently connected to the efficiency of the service. The extent of the penalty for the offense is the only open question.

*Id.* at 1113 (citations omitted). Since the decision in *Davis,* both this court and the Board have routinely held that the nexus between the charged offense and the efficiency of the service is automatic when the charged offense is AWOL. *See, e.g., Law v. United States Postal Serv.,* 852 F.2d 1278, 1279–80 (Fed.Cir.1988); *Fisher v. Department of Defense,* 54 M.S.P.R. 675, 684 (1992).

■ Ms. Bryant argues that the holding in *Davis* applies only to unexcused absences from a fixed tour of duty, and not to situations involving flex-time programs. Ms. Bryant's division participates in a restricted version of the Flexitime Program, under which employees are requested by the head of the work unit to prepare a written work schedule of start and stop times for each day of the work period.[2] Although these employees have a fixed, scheduled start time for each day, they "may occasionally elect to begin their work day within 15 minutes before or after their scheduled start work time without supervisory approval."[3]

Ms. Bryant argues that the 15–minute grace period provided under her division's Flexitime Program indicates that tardiness of less than 15 minutes is not critical to the efficiency of the service, as long as the work is eventually performed. For employees properly participating in that program, absence during the grace period would not affect the efficiency of the service because such an absence could not be considered AWOL. Ms. Bryant, herself, however, was

1. The record also indicates that Ms. Bryant's tardiness was ordinarily excused and not treated as AWOL, if she called in prior to her scheduled start time.

2. In its most general form, the NSF's Flexitime Program divides the work day into core and non-core hours. The NSF personnel manual defines the core time as the "designated hours and days during which employees are expected to be at work (unless absent with supervisory approval). Core time for full-time employees is 9:30 a.m. to 11:30 a.m. and 1:30 p.m. to 3:30 p.m. Monday through Friday." The manual defines flexible time (*i.e.,* non-core hours) as "the periods,

from 7:00 a.m. to 9:30 a.m. and 3:30 p.m. to 8:00 p.m., during which employees may have varying degrees of control over their time of starting and stopping work." The sum of the core and flexible time must equal eight hours per day, 40 hours per week and 80 hours in a bi-weekly pay period.

3. The manual also provides that "[e]mployees who choose an early or late start of up to 15 minutes must adjust their stop work time that same day to allow them to complete the hours of work called for in their work schedule."

specifically excluded from participating in the division's Flexitime Program. We need not speculate as to the myriad reasons the NSF may have for placing her on a fixed schedule while other employees in her division are afforded latitude.[4] The relevant point, for purposes of our decision, is that Ms. Bryant has a fixed starting time with no grace period whatsoever. From Ms. Bryant's perspective, her situation is no different than that of the nurse in *Davis*, and it comes as no surprise that the reasoning employed in *Davis* applies with equal force to Ms. Bryant. As we explained in *Davis*, "an essential element of employment is to be on the job when one is expected to be there. . . . An unexcused absence imposes burdens on other employees and, if tolerated, destroys the morale of those who meet their obligations." *Davis*, 792 F.2d at 1113. This is no less true for Ms. Bryant than it was for the nurse in *Davis*. Accordingly, the holding in *Davis*, that any sustained charge of AWOL is inherently connected to the efficiency of the service, extends to Ms. Bryant's case.

### C

 Finally, Ms. Bryant contends that the Board and the NSF failed to consider properly the criteria set out in *Douglas*. We begin by noting that the factors listed in *Douglas* are not exhaustive, and an agency is required only to consider those factors relevant to the action. *See Douglas*, 5 M.S.P.R. at 305–06.

The record in this case establishes that both the NSF and the Board properly considered the relevant *Douglas* factors, including mitigating factors. Ms. Bryant's second line supervisor, Mr. Preston Rich, testified before the Board's administrative judge and explained that he considered, *inter alia:* Ms. Bryant's prior disciplinary record; her response to the removal letter; the amount of her leave abuse compared to other employees' leave abuse; and the value of imposing a lesser penalty. Moreover, the agency's Removal Notice specifically addressed the *Douglas* factors raised by Ms. Bryant's attor-

ney. In view of this evidence, we cannot say that the penalty chosen is so "outrageously disproportionate" to the offense as to constitute an abuse of discretion in light of all relevant factors. *See Yeschick*, 801 F.2d at 384–85.

### III

The Board did not err in sustaining the NSF's charges of tardiness against Ms. Bryant. Moreover, the automatic nexus of *Davis* applies to Ms. Bryant because, although other employees may have had flexible schedules, she did not. Finally, both the NSF and the Board adequately considered the relevant *Douglas* factors. Accordingly, the decision of the Board is affirmed.

*AFFIRMED.*

---

**4.** We note that Ms. Bryant does not challenge the NSF's decision to revoke her grace-period privi-    lege.