Note: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3246

JAMES E. POLLOCK,

Petitioner,

v.

DEPARTMENT OF THE NAVY,

Respondent.

Frank DeMelfi, Melville Johnson, P.C., of Atlanta, Georgia, for petitioner.

Deborah A. Bynum, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director. Of counsel on the brief was Major Patrick A. Hodges, Attorney, Office of General Counsel, United States Department of the Navy, of Camp Pendleton, California.

Appealed from: Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3246

JAMES E. POLLOCK,

Petitioner,

v.

DEPARTMENT OF THE NAVY,

Respondent.

Petition for review of the Merit Systems Protection Board in
SF0752090047-I-1.

_____

DECIDED: March 16, 2010

_____

Before NEWMAN, LOURIE, and GAJARSA, Circuit Judges.

GAJARSA, Circuit Judge.

James E. Pollock appeals from the Merit Systems Protection Board's (the "Board") final decision affirming the Department of the Navy's (the "Navy") removal of Mr. Pollock as a medical technician for failure to provide a urine sample during a drug test. See Pollock v. Dep't of Navy, 111 M.S.P.R. 467 (2009) (Table). Because the Board did not commit reversible error and substantial evidence supports its decision, we affirm.

BACKGROUND

From April 4, 2004 to September 20, 2009, Mr. Pollock was a Medical Technician, GS-0620-07, in the clinical laboratory at the Naval Hospital Twentynine Palms, Marine Corps Air-Ground Combat Center (the "Naval Hospital") in Twentynine Palms, California. As part of his duties, Mr. Pollock was "in part responsible for the validity and credibility of the drug testing process." Under the Navy Drug Free Workplace Program, medical technicians receive random drug testing as a "Testing Designated Position," commonly referred to as "TDP."

On July 24, 2008, the Navy notified Mr. Pollock shortly after 8:00 a.m. that he was selected for a random drug test and instructed him to provide a urine sample between 9:15 a.m. and 11:15 a.m. at the Naval Hospital. Though Mr. Pollock stood in line with the other employees for testing that morning, he left the Naval Hospital at approximately 10:45 a.m. without providing a urine sample. Before leaving, Mr. Pollock did not obtain permission to abandon his responsibilities or forgo drug testing from his first-line supervisor, Lieutenant Elizabeth Angelo, who was absent that day.

On July 28, 2008, Mr. Pollock returned to work and contacted the Naval Hospital's drug coordinator, Leslie Rosson, to explain why he had failed to provide a urine sample. Mr. Pollock claimed that at 10:45 a.m. on the morning of the drug test, he learned that his estranged father had suffered a heart attack in Arizona. Upon hearing of the heart attack, Mr. Pollock left the Naval Hospital immediately, claiming to find out later that his father died while living at Mr. Pollock's sister's home.

Based on Mr. Pollock's claims, the Navy retroactively approved his request for leave from 10:45 a.m. on July 24, 2008 to 4:00 p.m. on July 25, 2008. Ms. Rosson

and others expressed their condolences to Mr. Pollock for his father's death. But the Navy also requested that Mr. Pollock submit medical documentation of the death by August 11, 2008, explaining that it would discipline Mr. Pollock if he failed to do so, including the possibility of removal. Mr. Pollock failed to provide any documentation by the deadline.

On August 12, 2008, Mr. Pollock and his union representative met with several Navy officials, including Lieutenant Commander Debra Baker, Lieutenant Angelo, and Employee Relations Specialist Jess Cook. During the meeting, Mr. Pollock explained that though he had tried to obtain documentation, his "sister had already moved the body to Idaho or to some other location, and he wasn't sure where." Mr. Cook then offered to assist Mr. Pollock in locating the necessary documentation and asked Mr. Pollock for his father's name and social security number. Mr. Pollock responded that he "didn't know his father's name and that he had not seen his father since he was about three years old." Mr. Cook then asked Mr. Pollock for his sister's name or other information in hopes of contacting her for documentation. But the union representative advised Mr. Pollock "not to say anything." Shortly thereafter, Lieutenant Commander Baker placed Mr. Pollock on administrative leave without pay.

On August 15, 2008, three days after the meeting with Navy officials, Lieutenant Commander Baker issued a notice of proposed removal to Mr. Pollock for failure to provide a urine sample. The union representative later testified that the Navy informed Mr. Pollock after the notice that it would "take anything to show where he was" on the day of the drug test. Two weeks after the notice, Mr. Pollock and his

union representative met with the deciding official, Commander Jensen,[1] to provide a written and oral response. In his written response, Mr. Pollock again recounted his story and further claimed that he obtained permission to leave the Naval Hospital from Chief Levy Malaguit on the morning of the drug test. But Mr. Pollock did not allege that he obtained permission from any officer with authority to excuse him. Chief Malaguit would later testify that Mr. Pollock did not mention anything about his father the day of the drug test and that he did not give Mr. Pollock permission to leave. During the meeting with Commander Jensen, Mr. Pollock provided a hand-written note allegedly written by his sister, Sue Collins. The note stated in full, "James Pollock is my brother[,] and he was in my presence on July 24[,] 2008 for a family matter." The note did not mention a death or a memorial service. At that same meeting, Mr. Pollock gave the Navy his father's name, Frank Pollock, and stated that he last saw his father two years ago, contrary to his earlier claim that he last saw his father as a three-year-old boy. Commander Jensen and Mr. Cook were unable to find any information on the death of Frank Pollock.

On September 12, 2008, Commander Jensen issued his decision to remove Mr. Pollock, concluding that Mr. Pollock's story was "fictitious." In making his decision, Commander Jensen explicitly considered all twelve factors from Douglas v. Veterans Administration, 5 M.S.P.B. 313 (1981). Commander Jensen considered mitigating factors such as Mr. Pollock's twenty-five years of federal service, his acceptable performance ratings, and his lack of prior disciplinary actions. But Commander Jensen determined that other factors weighed in favor of removal,

---

[1] Neither Mr. Pollock nor the Navy's appendices disclose Commander Jensen's full name.

including Mr. Pollock's ample opportunity to provide documentation of his father's death. Commander Jensen further explained that Mr. Pollock's convoluted reasons for avoiding the urine test also undermined his credibility and trustworthiness in performing laboratory tests as a medical technician.

Mr. Pollock timely appealed his removal to the Board. Before the administrative law judge ("ALJ"), Mr. Pollock testified that upon hearing of his father's death, he drove to Tucson, Arizona, where he thought his father had been living. But after he learned that his father was living with his estranged sister, he drove to Phoenix where a memorial service was held. Mr. Pollock further testified that he attended the memorial service with two friends, but was unable to explain why he never attempted to obtain a statement from his friends about the service. He also explained that his sister refused to give him "any information to convey to his employer" because she was "anti-government." To support this claim, Mr. Pollock submitted a second letter from his sister into evidence. She allegedly wrote that she was "sorry [she] can't give [him] the information [he] requested about Dad. Please understand that it is against my personal and religious beliefs to do so. This is America[,] and we have the right to privacy. This information is none of the government's business." The ALJ found Mr. Pollock's testimony unreliable and affirmed the Navy's decision to remove Mr. Pollock.

Unsatisfied, Mr. Pollock petitioned the Board to reconsider the ALJ's initial decision. For the first time on petition before the Board, Mr. Pollock submitted a signed statement from his friend, Brandi Vargas, stating that she and her husband attended the memorial service with Mr. Pollock. Though the letter was dated March

3, 2008, Mr. Pollock had not submitted this letter to the ALJ. The Board concluded that Mr. Pollock had not submitted any "new, previously unavailable, evidence and that the [ALJ] made no error in law or regulation that affects the outcome." Mr. Pollock now appeals the Board's decision. We have jurisdiction to review the Board's final decisions under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Our review of Board decisions is limited by statute. This court may reverse a final decision only if it finds the decision to be (1) "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law"; (2) "obtained without procedures required by law, rule, or regulation having been followed"; or (3) "unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2006); see also Farrell v. Dep't of Interior, 314 F.3d 584, 589 (Fed. Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).

To sustain an adverse action against an employee, the agency must establish three elements. Bryant v. Nat'l Sci. Found., 105 F.3d 1414, 1416 (Fed. Cir. 1997). First, the agency must establish by a preponderance of the evidence that the conduct occurred. Id. (citing 5 U.S.C. § 7701(c)(1)(B)). "Second, the agency must establish a nexus between the conduct and the efficiency of the service." Id. (citing 5 U.S.C. § 7513(a)). Third, the agency "must demonstrate that the penalty imposed was reasonable." Id.

We have stated, "The choice of penalty is committed to the sound discretion of the employing agency and will not be overturned unless the agency's choice of

penalty is wholly unwarranted in light of all the relevant factors." Guise v. Dep't of Justice, 330 F.3d 1376, 1382 (Fed. Cir. 2003). When determining the appropriate penalty for an employee, this court has held that agencies should consider the twelve factors listed in Douglas v. Veterans Administration, 5 M.S.P.B. 313, 332 (1981). See Nagel v. Dep't of Health & Human Servs., 707 F.2d 1384, 1387 (Fed. Cir. 1983). However, the Douglas factors are not a checklist that the agency must "appl[y] mechanically." Id. at 1386.

In this case, substantial evidence supports the Board's decision to affirm the Navy's removal of Mr. Pollock. First, the Navy demonstrated by a preponderance of the evidence that Mr. Pollock committed the conduct for which he was removed. See Bryant, 105 F.3d at 1416. Specifically, the Navy established that Mr. Pollock worked in a TDP as a medical technician, that he received orders to provide a urine sample as part of random drug test, that he reported for duty at the Naval Hospital on the day of the test, and that he failed to provide a urine sample when he left without permission.

Second, the Navy "establish[ed] a nexus between the conduct and the efficiency of the service." Id. Mr. Pollock received clear notice that he was subject to random drug testing and that his failure to do so could result in removal, but he nevertheless risked termination by not providing a urine sample. More importantly, Mr. Pollock was "responsible for the validity and credibility of the drug testing process" as a medical technician. Commander Jensen found that Mr. Pollock's failure to provide a urine sample and his fictitious excuse "question not only [his] integrity, but adversely affects the credibility of the laboratory itself." Substantial

evidence thus supports the Navy's finding that Mr. Pollock could no longer be trusted to run drug testing when he provided an unsubstantiated excuse for failing to submit to testing himself.

Third, the Navy demonstrated to the ALJ's satisfaction that "the penalty imposed was reasonable." Id. The Board must give deference "to the agency's judgment unless the penalty exceeds the range of permissible punishment specified by statute or regulation, or unless the penalty is 'so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion.'" Parker v. U.S. Postal Serv., 819 F.2d 1113, 1116 (Fed. Cir. 1987) (quoting Villela v. Dep't of Air Force, 727 F.2d 1574, 1576 (Fed. Cir. 1984)). While it may seem harsh to Mr. Pollock that the Navy removed him for failure to provide a urine sample, he does not dispute that the schedule of offenses and recommended remedies grants the deciding official the discretion to terminate an employee for failure to provide a urine sample. Moreover, the Navy removed Mr. Pollock because it found he lacked credibility and trustworthiness after claiming his father died based on specious proof. It was not unreasonable for the Navy to remove Mr. Pollock when he provided the Navy with a baseless story.

Mr. Pollock presents three arguments to support his claim that the Board abused its discretion. We reject all three arguments and address each in turn. First, Mr. Pollock argues that his collective bargaining agreement and Executive Order 12,564 require the Navy to place Mr. Pollock in an alternative position and refer him to treatment for failure to provide a urine sample. Mr. Pollock's argument is not supported by any specific evidence. Mr. Pollock may be referring to the Navy's

notice of random drug testing signed by Mr. Pollock. In that notice, the Navy warned that "[i]f you refuse to furnish a urine specimen o[r] fail to report for testing as directed, you will be subject to the same range of discipline as a verified positive test result for illegal drug use." The range of discipline "includ[ed] removal from the Federal Service." The notice further provided that if Mr. Pollock was found to have used illegal drugs, he would "be subject to the following . . . administrative actions mandated by Executive Order 12[,]564." Those administrative actions included immediate removal from a TDP "through reassignment, detail, or other personnel action" and referral "to the Civilian Employee Assistance Program." The notice never explained, however, that employees who refuse or fail to submit to drug testing will be entitled to the remedial measures in Executive Order 12,564. It only warned that such employees are subject to the same range of <u>discipline</u> as an employee who is found to use illegal drugs, including removal.

The Navy's notice comports with Executive Order 12,564. That order applies to "employee[s] who [are] <u>found</u> to use illegal drugs." Exec. Order No. 12,564 § 5(a), 51 Fed. Reg. 32,889 (Sept. 15, 1986) (emphasis added), <u>reprinted in</u> 5 U.S.C. § 7301 (2006). Specifically, the order states that "[a]gencies shall, <u>in addition to any appropriate personnel actions</u>, refer any employee who is found to use illegal drugs to an Employee Assistance Program for assessment, counseling, and referral for treatment or rehabilitation as appropriate." <u>Id.</u> (emphasis added). The order does not, however, address the appropriate personnel actions for employees who refuse or fail to take a drug test as required by the order. Refusal or failure to take a drug test presents a different problem for an agency. Employees who refuse or fail to take

a drug test can prompt others to act similarly, undermining the agency's drug-testing program. See Watson v. Dep't of Transp., 49 M.S.P.R. 509, 519 (1991), aff'd, 983 F.2d 1088 (Fed. Cir. 1992) (Table). If other employees could decline to take a random drug test without providing documentation for their excuse, the Navy Drug Free Workplace Program could not serve its intended purpose. Almost any creative, but unsubstantiated, excuse could relieve a TDP employee from providing a urine sample.

As part of his remedial-measures argument, Mr. Pollock further asserts that the Navy changed its description of the charge on appeal from "Failure to [P]rovide Urine Sample," to failure to follow a supervisory instruction to avoid placing him in an alternative position and referring him to treatment. Although the Navy indeed reworded the charge on appeal, the Board understood the charge in Mr. Pollock's notice of removal as failure to provide a urine sample and did not clearly err by declining to apply the executive order's remedial measures to an employee who avoided or refused to take a drug test. At most, the Board's decision not to apply the remedial measures is harmless error.

Second, Mr. Pollock argues that the district court abused its discretion by excluding a witness that would have testified that he saw Mr. Pollock speak with Chief Malaguit on the day of the drug test. The Board has broad discretion to exclude testimony that is irrelevant. 5 C.F.R. § 1201.41(b)(7)–(8) (2009); Tiffany v. Dep't of Navy, 795 F.2d 67, 70 (Fed. Cir. 1986). In this case, the ALJ was well within his discretion to exclude testimony that could have only established that Mr. Pollock

spoke with someone who lacked the authority to excuse him from leaving or taking the drug test.

Finally, Mr. Pollock argues that the Board failed to consider as mitigating circumstances that he cooperated with the Navy's request for documentation of his father's death and volunteered to resubmit to drug testing. We have held that "failure to consider a significant mitigating circumstance constitutes an abuse of discretion." VanFossen v. Dep't of Hous. & Urban Dev., 748 F.2d 1579, 1581 (Fed. Cir. 1984). Here, the ALJ in fact noted both Mr. Pollock's attempts at providing documentation and his offer to take another drug test. The ALJ did not, however, expressly consider these circumstances in determining whether removal was reasonable because the ALJ did not credit Mr. Pollock's testimony. The ALJ rejected his explanation for failing to comply with the Navy's request for documentation as unreliable. The Board need only consider mitigating circumstances, not circumstances it has determined are not reliable and thus not mitigating. Moreover, the fact that Mr. Pollock offered to resubmit to drug testing is insignificant because an offer to take a drug test four days later is no substitute for failure to take a random test.

CONCLUSION

For the foregoing reasons, we affirm the Board's decision.

No costs.