**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

LULIO E. CALDERON,

        Appellant,

      v.

DEPARTMENT OF JUSTICE,

        Agency.

DOCKET NUMBER
AT-0752-14-1000-I-1

DATE: July 13, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Matthew E. Hughes, Esquire, Washington, D.C., for the appellant.

Gail Elkins, Esquire, and Kaymi Y. Ross, Washington, D.C., for
the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1       The appellant has filed a petition for review of the initial decision, which sustained his removal. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order supplementing the administrative judge's analysis regarding the absence without leave (AWOL) charge and the nexus between the charges and the efficiency of the service, we AFFIRM the initial decision.

## BACKGROUND

¶2      Prior to his removal, the appellant was a Correctional Officer with the agency at the Federal Detention Center in Miami, Florida (FDC Miami). Initial Appeal File (IAF), Tab 11 at 50. In this capacity, he was responsible for the supervision, care, and correctional treatment of inmates, and the maintenance of institutional security. *Id*. at 56.

¶3      The agency removed the appellant, effective August 25, 2014, based on the following charges:  (1) AWOL; (2) giving an inmate something of value in violation of agency standards of conduct; (3) off‑duty misconduct; and (4) failure to follow policy (2 specifications). IAF, Tab 11 at 13‑16, 23‑27, 50. The AWOL charge stemmed from an incident where the appellant was absent from work from January 13, 2014, through February 3, 2014, due to his incarceration in the Broward County jail for a domestic violence charge. IAF, Tab 11 at 23, Tab 33 at 8. The charge of giving an inmate something of value was based on an incident in which the appellant gave an inmate, B.V., a bag of commissary items

that B.V. did not pay for and were not hers.  IAF, Tab 11 at 24, Tab 33 at 8.  The off‑duty misconduct charge was based on the appellant's arrest for and plea of "no contest" to a charge of driving under the influence (DUI).  IAF, Tab 11 at 25, Tab 33 at 9.  The failure to follow policy charge was based on incidents in which the appellant:  (1) allowed inmate B.V. to go through a bag of inmate mail; and (2) took a tray of food intended for inmates and ate it.  IAF, Tab 11 at 25‑26, Tab 33 at 9‑10.

¶4    The appellant filed a timely Board appeal challenging his removal.  IAF, Tab 1.  He did not dispute that the agency proved the charges of off‑duty misconduct, giving an inmate something of value, or failure to follow policy.  IAF, Tab 13 at 4‑6, Tab 33 at 8‑10; Hearing Transcript (HT) at 37‑41, 48, 62 (testimony of the appellant).[2]  However, he contested the AWOL charge, claiming that, when he called his supervisor, Lieutenant L.G., from jail on January 14, 2014, Lieutenant L.G. told him that he would place him on annual leave until he was released.  HT at 10‑11 (testimony of the appellant).  In contrast, during the Board hearing, Lieutenant L.G testified that he had granted the appellant emergency annual leave for only January 14, 2014, and told the appellant that he needed to call back and speak with their supervisor, Captain D.A., or an Administrative Lieutenant, because he was not authorized to grant the appellant unscheduled annual leave.  HT at 95‑98 (testimony of Lieutenant L.G.).

¶5    Following the hearing, the administrative judge issued an initial decision, finding that the agency proved all of the charges and specifications.  IAF, Tab 31, Initial Decision (ID).  Based on the appellant's admissions during his Board appeal and in his response to the notice of proposed removal, she found that the agency proved the charges of giving an inmate something of value, off‑duty

---

[2] A complete copy of the Hearing Transcript was attached to the agency's response to the appellant's petition for review.  Petition for Review File, Tab 9 at 23‑336.

misconduct, and failure to follow agency policies. ID at 2‑3. Regarding the AWOL charge, she found that, although Lieutenant L.G. may have granted the appellant annual leave on January 14, 2014, the appellant's absences on the remaining days at issue in the charge were unauthorized. ID at 5 n.2. She further found that, regardless of whether the appellant requested annual leave during his telephone conversation with Lieutenant L.T., or retroactively from Captain D.A. upon his release and return to work, the agency properly denied the appellant's request because he was needed on duty, and no one, including the appellant, knew how long he would be incarcerated. ID at 5. Finally, the administrative judge found that the agency proved a nexus between the charges and the efficiency of the service, ID at 5‑6, and that the penalty of removal was reasonable, ID at 6–9.

¶6      The appellant has filed a petition for review of the initial decision. Petition for Review (PFR) File, Tab 3. The agency has responded in opposition to the petition for review, and the appellant has filed a reply. PFR File, Tabs 9–10.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The administrative judge correctly found that the agency proved the AWOL charge.</u>

¶7      To prove a charge of AWOL, an agency must show by preponderant evidence that the employee was absent and that his absence was not authorized or that his request for leave was properly denied. *Wesley v. U.S. Postal Service*, 94 M.S.P.R. 277, ¶ 14 (2003). On review, as he did below, the appellant argues that his absence was authorized, because Lieutenant L.G. allegedly informed him that he would be placed on annual leave for the duration of his incarceration when he called Lieutenant L.G. from jail. PFR File, Tab 3 at 10–12, Tab 10 at 5–6; IAF, Tab 13 at 5; HT at 10 (testimony of the appellant). Based on this assertion, the appellant contends that he was on approved annual leave and

that the agency later improperly "changed" his status to AWOL.[3]  PFR File, Tab 3 at 10‑12, Tab 10 at 5‑6.

¶8   The administrative judge did not make any explicit credibility determinations regarding the appellant's testimony that Lieutenant L.G. told him that he would be placed on annual leave for the duration of his incarceration and Lieutenant L.G.'s conflicting testimony that he told the appellant that he would grant him emergency annual leave for only January 14, 2014.  ID at 3‑5; HT at 10‑11 (testimony of the appellant), 96‑98 (testimony of Lieutenant L.G.).  Under the circumstances of this case, we find that it was unnecessary for the administrative judge to do so because, regardless of what Lieutenant L.G. may have told the appellant, the record reflects that he lacked the authority to grant or deny the appellant annual leave for the duration of his incarceration.  HT at 98-100 (testimony of Lieutenant L.G.), 152 (testimony of Captain D.A.).

¶9   Lieutenant L.G. and Captain D.A. both testified that, due to the nature of the work that Correctional Officers perform and the need to ensure sufficient coverage to manage the inmate population at FDC Miami, Correctional Officers are not allowed to take annual leave any time that they want to.  HT at 98‑99 (testimony of Lieutenant L.G.), 147‑48 (testimony of Captain D.A.).  Instead, the Correctional Officers must submit their annual leave requests at the beginning of each calendar year, and the agency works with their union to schedule annual leave based on seniority, with no more than 10 Correctional Officers per week on scheduled annual leave.  HT at 98‑99 (testimony of Lieutenant L.G.), 147‑48 (testimony of Captain D.A.).  Once an annual leave schedule has been established for the year, Lieutenant L.G.'s authority is limited to granting emergency annual

---

[3] In the agency's response to the petition for review, the agency characterizes the appellant's argument as a new argument raised in the first instance on review. PFR File, Tab 9 at 19‑20.  We disagree, because the appellant raised this argument during the hearing below.  HT at 10 (testimony of the appellant).

leave for a single shift, to address unexpected circumstances, such as a Correctional Officer's car breaking down on the way to work.  HT at 99‑100 (testimony of Lieutenant L.G.), 187 (testimony of Captain D.A.).   Only Captain D.A. has the authority to approve other requests for unscheduled annual leave, and it is undisputed that, although Lieutenant L.G. made Captain D.A. aware of the appellant's incarceration, Captain D.A. did not approve unscheduled annual leave for the appellant.[4]  HT at 100 (testimony of Lieutenant L.G.), 152, 166‑68 (testimony of Captain D.A.).   For these reasons, we agree with the administrative judge that, although Lieutenant L.G. may have granted the appellant annual leave on January 14, 2014, the agency proved that the appellant's absence on the remaining days at issue in the charge was unauthorized.[5]  ID at 5 n.2; *Senior v. U.S. Postal Service*, [85 M.S.P.R. 283](), 289 (2000) (finding that the Board may sustain an AWOL charge even when the agency fails to prove that the employee was AWOL for the entire period charged).

¶10        Next, the appellant argues that his request for annual leave was improperly denied because Captain D.A. routinely denied annual leave requests for employees who were incarcerated, which the appellant contends was inconsistent with the agency's leave policy.  PFR File, Tab 3 at 10‑11, 18, Tab 10 at 6.  As an initial matter, the appellant has failed to identify any agency leave policy that

[4] The appellant did not offer evidence below contradicting the testimony of Captain D.A. and Lieutenant L.G. regarding the annual leave approval system at the agency facility.

[5] On review, the appellant also contends that he called FDC Miami and spoke to Lieutenant L.G. on several other occasions while he was incarcerated and that Lieutenant L.G. failed to tell him that he was AWOL, rather than on annual leave.  PFR File, Tab 3 at 10.  At hearing, Lieutenant L.G. testified that he did not receive any additional calls from the appellant while he was incarcerated.  HT at 101 (testimony of Lieutenant L.G.).  We need not resolve this issue because we find that it is irrelevant to whether the appellant was AWOL, where, as here, Captain D.A. was the only person authorized to approve the appellant's request for unscheduled annual leave and undisputedly did not do so.  HT at 152, 168 (testimony of Captain D.A.).

required Captain D.A. to allow him to use unscheduled annual leave during his incarceration.  PFR File, Tab 3 at 10‑11, 18, Tab 10 at 6; *Tines v. Department of the Air Force*, 56 M.S.P.R. 90, 92 (1992) (finding that a petition for review must contain sufficient specificity to enable the Board to ascertain whether there is a serious evidentiary challenge justifying a complete review of the record).  Moreover, to the extent that the appellant is attempting to raise an affirmative defense of harmful procedural error in the first instance on review, we decline to consider this claim because he has failed to demonstrate that it is based on new and material evidence that previously was unavailable to him despite due diligence.  *Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980) (finding that the Board generally will not consider an argument raised for the first time on review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence); 5 C.F.R. § 1201.24(b) (requiring an appellant to show good cause for raising claims or defenses for the first time after the conference defining the issues in the case).

¶11    Regardless of whether it generally is appropriate for Captain D.A. to routinely deny annual leave requests for employees who are incarcerated, we agree with the administrative judge that he properly denied the appellant's request for unscheduled annual leave under the circumstances at issue here.  ID at 5.  Although annual leave is an entitlement, it is subject to the agency's right to fix the time at which it is taken.  *See* 5 U.S.C. §§ 6302(d), 6303; *Dobert v. Department of the Navy*, 74 M.S.P.R. 148, 150 (1997); *Benally v. Department of the Interior*, 71 M.S.P.R. 537, 541 (1996).  In *Benally*, when evaluating whether an agency properly denied an appellant's request for annual leave to cover a period of incarceration, the Board held that it would consider the impact that the appellant's absence would have on the agency and the expected duration of his absence.  71 M.S.P.R. at 541‑42.

¶12    Here, we agree with the administrative judge that the agency established that the appellant was needed on duty at the time of his unscheduled absence resulting from his incarceration.  ID at 5.  Captain D.A. testified that the appellant's unscheduled absence for approximately 20 days caused a hardship for the agency in terms of staffing and that, to ensure adequate Correctional Officer coverage at FDC Miami, the agency was required to mandate that the appellant's coworkers cover his shifts and pay them overtime.[6]  HT at 210-11 (testimony of Captain D.A.).  Captain D.A. and Lieutenant L.G. testified that the appellant's unscheduled absence also adversely impacted his coworkers, who were forced to rearrange their personal lives and, on some occasions, work for 16 straight hours to cover his shifts.  HT at 103‑04 (testimony of Lieutenant L.G.), 210‑11 (testimony of Captain D.A.).  We further agree with the administrative judge that the agency properly denied the appellant's request for unscheduled annual leave because when the appellant called Lieutenant L.G. from jail to notify the agency of his whereabouts, no one, including the appellant, knew how long he would be incarcerated.  ID at 5; HT at 27 (testimony of the appellant), 104 (testimony of Lieutenant L.G.), 192‑93 (testimony of Captain D.A.); *cf.*, *Benally*, 71 M.S.P.R. at 539, 542 (finding that an agency improperly denied an appellant's request for annual leave where he was absent from work for 7 days to serve a jail sentence, had requested annual leave in advance of his absence, and the agency had initially approved the request and then rescinded the approval upon learning the reason for the request).

---

[6] On review, the appellant appears to contend that the agency failed to prove that it was required to pay overtime to other Correctional Officers as the result of his unscheduled absence from work.  PFR File, Tab 3 at 21‑22.  However, Captain D.A.'s testimony to this effect was unrebutted by the appellant.  *See,* e.*g.*, *Clark v. Equal Employment Opportunity Commission*, 42 M.S.P.R. 467, 476 (1989) (finding that an agency official's unrebutted testimony established by preponderant evidence that an appellant's misconduct adversely affected an agency's mission).

¶13     Finally, as he did below, the appellant contends that the agency impeded his ability to request annual leave by refusing to accept his collect phone calls from jail.  PFR File, Tab 3 at 8‑9, 12, Tab 10 at 5, 7; HT at 11 (testimony of the appellant).  At hearing, Lieutenant L.G. and Captain D.A. denied that the appellant attempted to call them from jail on any occasion other than the single collect call to Lieutenant L.G. on January 14, 2014.  HT at 101 (testimony of Lieutenant L.G.), 181 (testimony of Captain D.A.).  Even assuming that the appellant had attempted to make additional calls, however, he has identified no agency rule, regulation, or applicable collective bargaining agreement provision requiring the agency to expend Government funds to accept multiple collect calls from incarcerated employees.  PFR File, Tab 3 at 8‑9, 12, Tab 10 at 5; HT at 11.  More importantly, even if the appellant had called the agency again during his incarceration to attempt to request annual leave, as discussed above, Captain D.A., the only agency official authorized to approve such a request, had properly determined that the appellant's leave request would be denied.  HT at 164‑68, 186 (testimony of Captain D.A.).  In sum, for these reasons and the reasons discussed above, the administrative judge correctly found that the agency proved the AWOL charge.  ID at 3‑5.

The administrative judge properly found that the agency proved the charges of giving an inmate something of value, off‑duty misconduct, and failure to follow policy.

¶14     On review, the appellant does not dispute the administrative judge's findings that the agency proved the charges of giving an inmate something of value and failure to follow policy, and we discern no basis to disturb these findings.  PFR File, Tabs 3, 10; ID at 2‑3.  However, he contends that the Board should address "[w]hether the Administrative Judge erred in sustaining the charges of off‑duty misconduct."  PFR File, Tab 3 at 5.  The appellant has failed to present any arguments regarding why the administrative judge allegedly erred in sustaining the sole charge of off‑duty misconduct, which pertained to his DUI

conviction, and which he admitted in his response to the notice of proposed removal, IAF, Tab 33 at 9, and did not dispute that the agency proved below, PFR File, Tabs 3, 10.  In the absence of any such arguments, we discern no basis to disturb the administrative judge's finding that the agency proved the charge of off‑duty misconduct.    ID at 2‑3;  *Davison v. Department of Veterans Affairs*, 115 M.S.P.R. 640, ¶ 9 (2011) (finding that mere disagreement with an administrative judge's explained findings is not a basis to grant a petition for review); *see Cole v. Department of the Air Force*, 120 M.S.P.R. 640, ¶ 9 (2014) (finding that an appellant's admissions may suffice as proof of a charge without additional proof from the agency).

The agency proved a nexus between the appellant's misconduct and the efficiency of the service.

¶15    On review, the appellant contends that the administrative judge erred in finding that the agency proved a nexus between his misconduct and the efficiency of the service.[7]  PFR File, Tab 3 at 12‑14, 21‑23.  Although the administrative judge's analysis regarding the nexus between the charges and the efficiency of the service was cursory, and we modify the initial decision to supplement that analysis, we agree with the administrative judge's ultimate conclusion that the agency proved a nexus between the charges and the efficiency of the service.  ID at 6.

¶16    To prove nexus, the agency must show a clear and direct relationship between the articulated grounds for the adverse action and either the appellant's ability to accomplish his duties satisfactorily or some other legitimate Government interest.  *Ellis v. Department of Defense*, 114 M.S.P.R. 407, ¶ 8 (2010).  An agency may establish nexus by showing that the employee's conduct:

---

[7] Several of the arguments that the appellant characterizes as challenges to the administrative judge's findings regarding the nexus between the charges and the efficiency of the service are actually challenges to the reasonableness of the penalty, and, accordingly, we have addressed them as such.  PFR File, Tab 3 at 21‑23.

(1) affected his or his coworkers' job performance, (2) affected management trust and confidence in the employee's job performance, or (3) interfered with or adversely affected the agency's mission. *Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶ 11 (2010).

¶17    Regarding the AWOL charge, the nexus between the charged offense and the efficiency of the service is automatic when the charged offense is AWOL. *Bryant v. National Science Foundation*, 105 F.3d 1414, 1417 (Fed. Cir. 1997). Regarding the charges of giving an inmate something of value and failure to follow policy, we find that the agency established a nexus between these charges and the efficiency of the service because the appellant's misconduct occurred at work, his actions were contrary to the agency's Standards of Employee Conduct, and his actions created an increased risk that inmates would engage in disruptive behavior.    HT at 215‑17 (testimony of Warden W.T.); IAF, Tab 11 at 13‑14; *Miles v. Department of the Navy*, 102 M.S.P.R. 316, ¶ 11 (2006) (finding that it is well settled that there is sufficient nexus between an employee's conduct and the efficiency of the service where the conduct occurred at work); *Blevins v. Department of the Army*, 26 M.S.P.R. 101, 104 (1985) (finding that a failure to follow instructions or abide by requirements affects an agency's ability to carry out its mission), *aff'd*, 790 F.2d 95 (Fed. Cir. 1986) (Table).

¶18    Regarding the charge of off‑duty misconduct, nexus may be proved by showing that an employee engaged in off-duty misconduct that is inconsistent with the agency's mission and undermines confidence in the employee. *Brown v. Department of the Navy*, 229 F.3d 1356, 1361 (Fed. Cir. 2000); *Kruger v. Department of Justice*, 32 M.S.P.R. 71, 75–76 (1987) (finding that, when an employee engages in conduct antithetical to the agency's mission, the agency is not required to demonstrate a specific impact on the employee's job performance or service efficiency to establish nexus).    Here, the agency established that a criminal charge of DUI was inconsistent with the appellant's

role as a law enforcement officer, could adversely affect public trust and confidence in the agency, and undermined the agency's confidence in his ability to uphold the standards expected of a Correctional Officer. HT at 219 (testimony of Warden W.T.); IAF, Tab 11 at 14, 25; *Todd v. Department of Justice*, 71 M.S.P.R. 326, 330 (1996) (finding that it is an extremely serious offense when a Correctional Officer violates Federal or state laws against drunken driving because it compromises the integrity of personnel in the Federal prison system).

¶19    In sum, for the reasons discussed above, we agree with the administrative judge's conclusion that the agency proved a nexus between each of the charges and the efficiency of the service. ID at 6.

The administrative judge correctly found that the penalty of removal was reasonable.

¶20    On review, the appellant argues that the penalty of removal was too harsh for his misconduct. PFR File, Tab 3 at 14‑23, Tab 10 at 6‑7. Where, as here, all of the agency's charges are sustained, the Board will review the agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within the tolerable limits of reasonableness. *Ellis*, 114 M.S.P.R. 407, ¶ 11. In making this determination, the Board must give due weight to the agency's primary discretion in maintaining employee discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility, but to ensure that managerial judgment has been properly exercised. *Id.* The Board will modify or mitigate an agency‑imposed penalty only where it finds the agency failed to weigh the relevant factors or that the penalty clearly exceeds the bounds of reasonableness. *Id.*

¶21    The administrative judge found that the deciding official considered the appropriate factors under *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305–06 (1981), and that the penalty of removal was reasonable. ID at 6‑9. She found that the deciding official considered several mitigating factors, including

the appellant's lengthy Federal service, lack of prior discipline, and acceptable performance, but reasonably concluded that they did not outweigh the seriousness of the misconduct at issue here. ID at 8‑9; IAF, Tab 11 at 14.

¶22    On review, the appellant reiterates his arguments, raised below, that the penalty of removal is unreasonable and should be mitigated because: (1) he had 16 years of Federal service; (2) the bag of commissary items that he gave B.V. contained food, rather than contraband; (3) he allowed B.V. to look through the inmate mail bag because she was expecting a piece of legal mail, which he assumed was time‑sensitive; (4) he ate the tray of food intended for inmates because he had forgotten his lunch and was hungry, and the tray was allegedly leftover; and (5) the domestic violence charge that caused him to be incarcerated was eventually dropped. PFR File, Tab 3 at 14‑17, 20‑23; IAF, Tab 13 at 4; HT at 38‑40, 45‑48, 61 (testimony of the appellant). The administrative judge considered these same arguments and concluded that the penalty of removal was reasonable. ID at 7‑9. We discern no basis to disturb this determination. *Crosby v. U.S. Postal Service*, [74 M.S.P.R. 98](#), 105–06 (1997) (finding no reason to disturb an administrative judge's findings where she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions).

¶23    The most important factor in assessing whether the agency's chosen penalty falls within the tolerable bounds of reasonableness is the nature and seriousness of the misconduct and its relation to the employee's duties, position, and responsibilities. *Edwards v. U.S. Postal Service*, [116 M.S.P.R. 173](#), ¶ 14 (2010). The Board has held that AWOL is a serious offense that warrants a severe penalty. *Bowman v. Small Business Administration*, [122 M.S.P.R. 217](#), ¶ 12 (2015). In addition, the Board has found removal to be a reasonable penalty for comparable or shorter periods of AWOL than the approximate 20‑day period at issue here. *Hawkins v. Department of the Navy*, [49 M.S.P.R. 501](#), 503, 507 (1991) (finding that the penalty of removal was reasonable for 16 days of AWOL

for an appellant with no prior discipline and 6 years of service who was absent from duty due to incarceration); *Young v. U.S. Postal Service*, 14 M.S.P.R. 549, 551 (1983) (finding that the penalty of removal was reasonable where an appellant with 17 years of service and satisfactory performance was AWOL for 40.75 hours over a period of approximately a month, and his absence affected the agency's accomplishment of its mission).

¶24    We have considered the appellant's argument that his circumstances are distinguishable because the domestic violence charge that caused him to be incarcerated was eventually dropped, and find it unpersuasive.  PFR File, Tab 3 at 20, 22.  It is unclear from the record why the domestic violence charge was dropped, and, in any event, the agency charged the appellant with AWOL, not with committing the domestic violence that resulted in his incarceration.  IAF, Tab 11 at 14, 23‑24.

¶25    Moreover, in addition to the AWOL charge, there are three other serious charges at issue here.[8]  The Board has held that it is a serious offense for a Correctional Officer to violate state or Federal laws regarding DUI.  *Todd*, 71 M.S.P.R. at 330.  Regarding the charges of failure to follow policy and giving an inmate something of value, Warden W.T. explained that the appellant's actions created a potential safety risk and caused him to lose confidence in the appellant's ability to work with inmates and uphold the standards expected of a Correctional Officer, especially where, as here, two of the incidents at issue

---

[8] On review, the appellant appears to contend that the agency was required to prove that removal was a reasonable penalty for each of the four separate charges at issue.  PFR File, Tab 3 at 14‑17.  However, in evaluating the reasonableness of the penalty, the Board considers all of the sustained charges, rather than each individual sustained charge.  *See, e.g.*, *Little v. Department of Transportation*, 112 M.S.P.R. 224, ¶ 32 (2009) (considering the "multiplicity of charges" at issue in determining that a penalty of removal was reasonable); *Valenzuela v. Department of the Army*, 107 M.S.P.R. 549, ¶ 15 (2007) (finding that, when the Board sustains fewer than all of the agency's charges, it will consider carefully whether the sustained charges merit the penalty imposed by the agency).

involved the appellant showing favoritism to the same inmate, B.V.[9]  HT at 212, 214‑17 (testimony of Warden W.T.); IAF, Tab 11 at 13‑14.  Finally, as a law enforcement officer, HT at 49‑50 (testimony of the appellant), 219 (testimony of Warden W.T.), the appellant was held to a higher standard of conduct with respect to the seriousness of his offenses than other employees.  *Negron v. Department of Justice*, 95 M.S.P.R. 561, 573 (2004) (finding that law enforcement officers are held to a higher standard of conduct than other employees); *Todd*, 71 M.S.P.R. at 330 (same).  For these reasons, we agree with the administrative judge that, although there were mitigating factors, in light of the seriousness of the appellant's misconduct, the penalty of removal was within the bounds of reasonableness.  ID at 8‑9.

¶26      On review, the appellant also contests the administrative judge's finding that he failed to prove his disparate penalties claim.  PFR File, Tab 3 at 15‑19, Tab 10 at 7.  To establish disparate penalties, the appellant must show that there is enough similarity between both the nature of the misconduct and the other factors to lead a reasonable person to conclude that the agency treated similarly situated employees differently.  *Boucher v. U.S. Postal Service*, 118 M.S.P.R. 640, ¶ 20 (2012) (citing *Lewis v. Department of Veterans Affairs*, 113 M.S.P.R. 657, ¶ 15 (2010)).  If the appellant meets this initial burden, the agency must

---

[9] The appellant also argues on review that the penalty of removal was unreasonable because Warden W.T. testified that he considered the appellant to be compromised once he gave inmate B.V. an item of value, and felt that removal was the only option.  PFR File, Tab 10 at 6‑7; HT at 227‑28 (testimony of Warden W.T.).  Based on Warden W.T.'s testimony, the appellant contends that Warden W.T. improperly failed to consider progressive discipline.  PFR File, Tab 10 at 6‑7.  As an initial matter, the appellant has failed to identify any agency policy or applicable collective bargaining agreement provision requiring the agency to apply progressive discipline.  *Id.* Furthermore, removal would have been within the range of the agency's Table of Penalties for a first offense of giving an inmate something of value, even if this had been the appellant's only misconduct at issue, which it was not.  IAF, Tab 12 at 34. Therefore, the appellant's argument fails to demonstrate error in the administrative judge's finding that the penalty of removal was reasonable.

prove a legitimate reason for the difference in treatment by a preponderance of the evidence before the penalty can be upheld. *Boucher*, 118 M.S.P.R. 640, ¶ 20. Here, the administrative judge found that the appellant failed to meet his initial burden of showing that his proffered comparators were similarly situated. ID at 8. We agree.

¶27      As a proffered comparator, the appellant identified a Human Resources Manager, who, through unspecified actions or inactions, allowed inmates to obtain personal information about certain agency staff. HT at 257, 259, 268 (testimony of the appellant). He identified several Correctional Officers who were purportedly charged with AWOL due to incarceration and were not removed, but provided no information regarding the duration of their AWOL and did not know whether they had been removed and then reinstated pursuant to settlement agreements. HT at 269‑70, 274‑75, 278‑79 (testimony of the appellant); *Dick v. U.S. Postal Service*, 52 M.S.P.R. 322, 325 (finding that an agency is not required to explain lesser penalties imposed against other employees whose charges were resolved by settlements), *aff'd*, 975 F.2d 869 (Fed. Cir. 1992) (Table). He identified two Correctional Officers who were allegedly charged with off‑duty DUIs and not removed, HT at 272‑73, and finally, a number of Correctional Officers who were purportedly removed by the agency for unspecified misconduct and then allowed to return to work, HT at 257−59, 275 (testimony of the appellant). The appellant admitted, however, that he was unaware of any comparators who had been charged with all of the misconduct at issue here (AWOL, giving an inmate something of value, off‑duty misconduct, and failure to follow policy) and were not removed by the agency. HT at 279 (testimony of the appellant). Under these circumstances, we discern no error in the administrative judge's finding that the appellant failed to prove his

disparate penalties claim.[10]  *Reid v. Department of the Navy*, 118 M.S.P.R. 396, ¶¶ 22‑23 (2012) (finding that an appellant failed to establish a disparate penalties claim where the alleged comparators engaged in conduct similar to only one of the three charges for which the appellant was removed).

¶28    In conclusion, for the reasons discussed above, we find no reason to disturb the administrative judge's findings in the initial decision.

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.  You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

---

[10] For the first time on review, the appellant contends that the Board's nonprecedential decision in *Caban v. Department of Justice*, MSPB Docket No. AT‑0752‑13‑0002‑I‑1, Final Order (May 27, 2014), demonstrates that he was subject to a disparate penalty. PFR File, Tab 3 at 15, 18‑19, Tab 10 at 7.  The appellant has not demonstrated that this argument is based on new and material evidence that was not previously available despite his due diligence, and, therefore, we will not consider it.  *Banks*, 4 M.S.P.R. at 271.  Even if we were to consider the appellant's new argument, however, it would not establish that he was subject to a disparate penalty.  As an initial matter, although the appellant repeatedly asserts that the appellant in *Caban* was suspended for 15 days based on numerous charges, PFR File, Tab 3 at 15, Tab 10 at 7, in fact, the agency removed the appellant based on those charges.  *Caban*, MSPB Docket No. AT‑0752‑13‑0002‑I‑1, Final Order at 2.  Only three of the charges (introduction of contraband, the appearance of an inappropriate relationship/favoritism toward an inmate, and inattention to duty) were sustained during that appellant's Board appeal, and the Board mitigated the penalty to a 90‑day suspension.  *Caban*, MSPB Docket No. AT‑0752‑13‑0002‑I‑1, Final Order at 2‑5, 7‑8.  Moreover, the appellant in *Caban* was not charged with AWOL or off‑duty misconduct, as the appellant was here. *Caban*, MSPB Docket No. AT‑0752‑13‑0002‑I‑1, Final Order.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD: 	_____
	Jennifer Everling
	Acting Clerk of the Board

Washington, D.C.